Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/21/2023 08:05 AM CDT

Kristine Clark, appellant, v. Scheels
All Sports, Inc., appellee.

___ N.W.2d ___

Filed April 21, 2023.    No. S-21-624.

1.  **Summary Judgment: Appeal and Error.** An appellate court affirms a
    lower court's grant of summary judgment if the pleadings and admitted
    evidence show that there is no genuine issue as to any material facts or
    as to the ultimate inferences that may be drawn from the facts and that
    the moving party is entitled to judgment as a matter of law. In reviewing
    a summary judgment, an appellate court views the evidence in the light
    most favorable to the party against whom the judgment was granted, and
    gives that party the benefit of all reasonable inferences deducible from
    the evidence.

2.  **Summary Judgment.** One of the primary purposes of summary judg-
    ment is to pierce the allegations in the pleadings and show conclusively
    that the controlling facts are other than as pled.

3.  ____. Summary judgment is proper only when the pleadings, deposi-
    tions, admissions, stipulations, and affidavits in the record disclose that
    there is no genuine issue as to any material fact or as to the ultimate
    inferences that may be drawn from those facts and that the moving party
    is entitled to judgment as a matter of law.

4.  **Summary Judgment: Proof.** The party moving for summary judgment
    must make a prima facie case by producing enough evidence to show
    the movant would be entitled to judgment if the evidence were uncon-
    troverted at trial. If the moving party makes a prima facie case, the bur-
    den shifts to the nonmovant to produce evidence showing the existence
    of a material issue of fact that prevents judgment as a matter of law. But
    in the absence of a prima facie showing by the movant that he or she
    is entitled to summary judgment, the opposing party is not required to
    reveal evidence which he or she expects to produce at trial.

5.  ____: ____. If the burden of proof at trial would be on the nonmov-
    ing party, then the party moving for summary judgment may satisfy

its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

6. **Negligence: Words and Phrases.** There is no fixed rule for determining when a condition presents an unreasonable risk of harm, but the plain meaning of the term suggests a uniquely or unacceptably high risk of harm—something more than the usual risks commonly encountered.

7. **Negligence: Liability: Words and Phrases.** In the context of premises liability cases, an unreasonable risk of harm generally means a risk that a reasonable person, under all the circumstances of the case, would not allow to continue.

8. **Summary Judgment.** When the summary judgment standard is properly, carefully, and cautiously applied to enter judgment as a matter of law on a claim or defense that is shown to be undisputed, it is not an extreme remedy; it is simply another procedural tool by which undisputed claims or defenses can be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources.

9. **Negligence: Presumptions.** The mere fact that a fall occurred is not evidence of negligence, nor does it raise a presumption of negligence.

10. **Summary Judgment: Evidence.** Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment; the evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork.

11. **Evidence: Proof.** The failure of proof on an essential element of the nonmoving party's claim necessarily renders all other facts immaterial.

12. **Summary Judgment: Pleadings.** The pleadings frame the issues to be considered on a motion for summary judgment.

13. ____: ____. Courts may not enter summary judgment on an issue not presented by the pleadings.

14. **Summary Judgment.** In the summary judgment context, a disputed fact is material only if it would affect the outcome of the case.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

Cathy S. Trent-Vilim, Brian J. Brislen, and Maria T. Lighthall, of Lamson, Dugan & Murray, L.L.P., and Tyler K. Spahn, Assistant Lincoln City Attorney, for appellant.

Michael L. Moran, of Engles, Ketcham, Olson & Keith, P.C., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## I. INTRODUCTION

Kristine Clark filed a premises liability action against Scheels All Sports, Inc. (Scheels), alleging she tripped and fell due to a dangerous condition on the premises. Scheels successfully moved for summary judgment, and Clark appeals. One of Clark's primary arguments on appeal is that Scheels, as the moving party on summary judgment, could not satisfy its initial burden merely by citing to discovery showing that Clark did not have evidence to prove a material element of her claim. According to Clark, the only way Scheels could meet its initial burden was to offer evidence affirmatively negating Clark's claim that Scheels was negligent.

We analyze the 2017 amendments to Neb. Rev. Stat. § 25-1332(2) (Cum. Supp. 2022) and conclude they expressly allow a moving party to show the absence of a genuine dispute as to any material fact by showing that "an adverse party cannot produce admissible evidence to support the fact."[1] We also conclude that Scheels satisfied its prima facie burden by showing that Clark could not produce admissible evidence to support a material element of her premises liability claim, and we further conclude that Clark did not thereafter show a genuine dispute of material fact sufficient to preclude summary judgment. We therefore affirm the judgment of the district court.

## II. BACKGROUND

In February 2019, Clark filed a complaint against Scheels in the district court for Douglas County. As relevant to the

---

[1] See § 25-1332(2)(b).

issues on appeal, Clark's complaint alleged that on April 18, 2016, while entering a Scheels store in Omaha, Nebraska, her "shoelace got caught in the foot grate in the store foyer between the outside and inside doors [and the] entanglement caused her to trip on the grate and fall." The complaint identified two conditions in the foyer that Clark alleged caused her fall: (1) an unsafe or poorly maintained "foot grate" and (2) a strong "wind tunnel effect" that increased the falling hazard. Scheels' answer denied these allegations and alleged several affirmative defenses.

## 1. Discovery

Both parties conducted discovery focused on whether Clark's fall was caused by an unreasonably dangerous condition in Scheels' foyer. Because the information learned from discovery is central to the parties' arguments on summary judgment, we review it in some detail.

Before suit was filed, Clark requested, and Scheels provided, a copy of its surveillance video of the foyer area at the time of Clark's fall. That video was recorded by a motion-activated camera mounted inside the store near the checkout area. The camera was aimed at a panel of eight glass doors leading directly into the foyer area where Clark fell. The foyer area is visible through the glass doors, but several display mannequins inside the store partially obstructed the camera's view of the area beyond several doors near the center of the panel. The motion-activated camera did not record continuously, but it did capture approximately 13 minutes of video that showed Clark as she walked through the exterior doors into the foyer area and approached the doors near the center of the panel. The video did not capture the precise moment or mechanism of Clark's fall, and the mannequins blocked the camera's view of the area where Clark landed. But the video did capture some of the activity in the foyer after Clark's fall as store employees and emergency personnel came to Clark's aid.

Scheels also produced a "Guest Injury Accident Report" prepared by its employees at or near the time of the fall. According to the report, Clark told store employees she "fell because her shoelace got caught in the grate." The report states that Clark's shoelaces were "very long" and that one set of shoelaces was untied when store employees arrived in the foyer, but the shoelaces were not stuck in the grate.

Clark deposed several of the Scheels employees on duty at the time of her fall. None recalled seeing any substance, obstacle, or defect in the foyer area, none had knowledge of any problem with the grate in the foyer, and none recalled any other customer tripping on the grate. The employees were not asked about a wind tunnel effect in the foyer.

Before deposing Clark, Scheels served interrogatories and requests for production. This discovery asked Clark to identify all witnesses with information bearing on any of the allegations of the complaint and to identify any expert witness expected to be called at trial and state the substance of and grounds for the expert's opinion. It also asked Clark to produce any exhibits she intended to introduce at trial and to produce copies of any expert reports. Clark's initial and supplemental discovery responses did not identify any exhibits, other than Scheels' surveillance video, to support her claim that the foyer was unreasonably dangerous in any of the ways alleged in the complaint. Nor did her discovery responses identify any witness or expert who was expected to testify as to the existence of an unreasonably dangerous condition in the foyer area.

When Scheels deposed Clark, she did not testify that she fell because her shoelaces got caught in the foot grate, although that was the mechanism of fall alleged in her complaint. Instead, she testified that she did not think she was wearing shoes with shoelaces at all when she fell. When asked what she remembered about the cause of her fall, she testified, "I remember pushing the button for the electric door to

open, but after that, I don't remember anything else." In response to followup questions, she testified:

A. I just — I just remember going in, and I — I don't remember anything else that happened. I don't know — I just — I thought to myself, "Did somebody jump me," or "Did the door malfunction," or ["]somebody push me," or . . .

. . . .

Q. So as you — you didn't — sounds like what you're saying is you didn't know what happened.

Is that accurate?

A. Yeah, I — I don't really — I mean, I — I don't know. I remember walking in, sort of, and then that was the last I remember.

Later in her deposition testimony, Clark confirmed that she did not know whether the door malfunctioned, she did not know whether she tripped on anything in the foyer, she did not know if anyone pushed her, and she did not inspect the area around her immediately after her fall. After Clark's deposition, there was no request to amend the complaint to allege a different mechanism of injury, allege a different theory of recovery, or to identify additional dangerous conditions on the premises.

## 2. Summary Judgment Evidence

In March 2020, Scheels moved for summary judgment, citing Clark's deposition testimony and her discovery responses to argue that she could not prove material elements of her premises liability claim. Hearing on the motion was continued several times to allow Clark to conduct additional discovery and inspect the premises. The summary judgment motion was eventually heard in May 2021. Both parties adduced evidence at the hearing.

Scheels offered the operative pleadings, Clark's discovery deposition with attached exhibits (including her supplemental interrogatory answers), and Clark's supplemental

responses to Scheels' requests for production. All exhibits were received. Relying on this evidence, Scheels argued that even giving Clark the benefit of all reasonable inferences, the evidence showed only that Clark had fallen in Scheels' foyer. Scheels argued that Clark did not know what caused her fall and that she had no evidence to support the alleged dangerous conditions identified in her complaint. Arguing that Clark could not prove the material elements of her premises liability claim, Scheels asserted it was entitled to judgment as a matter of law.

In opposing summary judgment, Clark offered, and the court received, the affidavit of her attorney. Attached to the attorney's affidavit were several exhibits, including the surveillance video of her fall, the "Guest Injury Accident Report" completed after her fall, and the deposition transcripts of several Scheels employees. Clark argued that even though she did not know what caused her fall, this evidence, and the reasonable inferences from this evidence, showed there was a genuine factual dispute as to whether her fall was caused by an unsafe or poorly maintained floor grate.

Clark also argued there was a reasonable inference that her fall might have been caused by a defective or malfunctioning door, although that was not one of the allegedly dangerous conditions identified in her complaint. Regarding the entry doors, Clark's attorney averred that during an onsite inspection of the foyer conducted 2 months before the summary judgment hearing and nearly 5 years after Clark's fall, he learned from the store manager that Scheels had "replaced the doors of the entryway in January 2021." Counsel averred that "Scheels replac[ed] the entryway doors without providing prior notice to [Clark, so she] is unable to determine whether there was a defect or unsafe condition of the doors on April 18, 2016, which caused or contributed to [her] injury." Our record contains no requests to continue the summary judgment hearing to permit discovery on which entry doors

were replaced in 2021, or why. Instead, Clark relied on the attorney's averment to argue that Scheels had engaged in the intentional spoliation of evidence, which she argued entitled her to an adverse inference that the entry doors were unreasonably dangerous.

### 3. SUMMARY JUDGMENT ORDER

After considering the parties' exhibits and arguments, the district court granted summary judgment in favor of Scheels. In doing so, the court did not focus on the evidence that Clark was unsure about what caused her fall. Instead, after reciting the material elements that Clark needed to prove at trial to recover on her premises liability claim, the court focused on whether there was any evidence in the record to prove that Clark's fall was caused by an unreasonably dangerous condition on Scheels' premises.

Although Clark's complaint had identified two allegedly dangerous conditions (the foot grate and a wind tunnel effect), when opposing the motion for summary judgment, Clark did not contend there was evidence to support her allegation of a wind tunnel effect, and the district court did not address that allegation. But the court did address Clark's argument that there was evidence to support her allegation that the foot grate presented an unreasonably dangerous condition, and it disagreed, reasoning:

> Clark has provided no evidence that the condition which [she claims] caused her injuries presented an unreasonable risk of harm. There is no evidence that the grate was broken, loose, defective, or raised higher than the floor surrounding it. Nothing has been offered to suggest that similar floor grates at other retail stores have caused similar accidents in the past. . . . [T]here is no evidence there was anything wrong with the floor grates or that they were in a defective condition. Nor is there evidence that anyone else ever tripped over the floor grates. In the absence of such evidence, a finder of fact would

have to speculate to conclude that the floor grates presented an *unreasonable* risk of harm.

The district court also addressed what it described as "Clark's suggestion that her fall *might have been* caused by a malfunctioning door," and it concluded this did not present a genuine issue of material fact. The court did not analyze whether the spoliation theory Clark advanced on summary judgment entitled her to an inference that the doors were defective. Instead, it noted that Clark had not alleged the entry doors caused or contributed to her fall, and it reasoned that "[e]ven if evidence had been offered to show that the door malfunctioned at the time or was defective," there was no supporting allegation that the door had anything to do with Clark's fall.

In summary, the district court found there was "simply nothing before the Court from which it could reasonably be inferred that Clark's injuries were caused by an *unreasonably* dangerous condition on Scheels' property." The court therefore concluded Scheels was entitled to judgment as a matter of law, and it dismissed the action with prejudice.

Clark timely appealed. One of the primary issues on appeal is whether a party who moves for summary judgment can meet its initial burden of showing the absence of a genuine dispute of fact by citing materials in the record that show the opposing party lacks evidence to prove a material fact on which the opposing party will bear the burden of proof at trial. We moved the case to our docket to consider that issue, and we requested supplemental briefing on the impact, if any, of amendments made in 2017 to the provisions of § 25-1332.

## III. ASSIGNMENTS OF ERROR

Clark assigns, restated, that the district court erred in two respects: (1) prematurely shifting the evidentiary burden to her as the nonmoving party to show the existence of a genuine factual dispute when Scheels had not met its prima facie burden as the moving party and (2) concluding Clark had

not shown a material factual dispute sufficient to preclude summary judgment.

## IV. STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[3]

## V. ANALYSIS

[2] To address Clark's assignments of error, we begin by reviewing the statutory framework and the legal standards that govern summary judgment in Nebraska. Summary judgment has been statutorily authorized in civil actions in Nebraska since 1951.[4] Summary judgment motions may be filed by parties who are asserting, and by parties who are defending against, a claim, counterclaim, cross-claim, or request for declaratory judgment.[5] A party may seek summary judgment as to "all or any part" of such claims.[6] We have long observed

---

[2] *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020).

[3] *Id.*

[4] See 1951 Neb. Laws, ch. 65, §§ 1 to 7, pp. 199-200.

[5] See Neb. Rev. Stat. § 25-1330 (Reissue 2016) (governing summary judgment by those bringing claims) and Neb. Rev. Stat. § 25-1331 (Reissue 2016) (governing summary judgment by those against whom claims are brought).

[6] See §§ 25-1330 and 25-1331. Accord § 25-1332(1) ("summary judgment . . . may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages").

that one of the primary purposes of summary judgment is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled.[7]

The statutory procedure governing summary judgment motions is set out in § 25-1332. Section 25-1332 identifies the type of evidence that may be received on a motion for summary judgment and the legal standard to be applied when deciding such motions. Regarding the former, the statute provides, "The evidence that may be received on a motion for summary judgment includes depositions, answers to interrogatories, admissions, stipulations, and affidavits."[8] Regarding the latter, the statute provides that summary judgment "shall be rendered forthwith if the pleadings and the evidence admitted at the hearing show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9]

[3,4] Consistent with these statutory provisions, our cases have long held that summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[10] Likewise, our cases have long held that the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the

---

[7] See, e.g., *Porter v. Knife River, Inc.*, 310 Neb. 946, 970 N.W.2d 104 (2022); *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019); *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015); *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004); *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002).

[8] § 25-1332(1).

[9] *Id.*

[10] See, e.g., *Porter, supra* note 7; *Wintroub v. Nationstar Mortgage*, 303 Neb. 15, 927 N.W.2d 19 (2019).

evidence were uncontroverted at trial.[11] If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[12] But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial.[13]

One of Clark's arguments on appeal is that Scheels did not meet its initial burden as the moving party and that therefore, the district court erred in shifting the burden to her to show the existence of a genuine factual dispute. According to Clark, Scheels could not make out a prima facie case merely by showing that Clark lacked evidence sufficient to prove a material element of her claim. Instead, Clark contends that Scheels had to offer evidence affirmatively negating Clark's allegation that she fell due to an unreasonably dangerous condition on the premises. More specifically, Clark contends that Scheels failed to meet its prima facie burden because it "presented no affirmative evidence proving it acted reasonably, or that the premises were in a safe condition at the time Clark fell."[14]

To address Clark's argument, we begin by examining our precedent on how movants can meet their initial burden to produce enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. We then examine U.S. Supreme Court case law addressing the same issue under Fed. R. Civ. P. 56 (Rule 56). Finally, we consider the 2017 amendments to the summary judgment procedure in § 25-1332 and the impact of those amendments on Clark's argument.

---

[11] See, e.g., *Porter, supra* note 7.

[12] *Id.*

[13] *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

[14] Supplemental brief for appellant at 5.

### 1. Making Prima Facie Case
### Under § 25-1332

Before the effective date of the 2017 amendments to § 25-1332, Nebraska's summary judgment statute did not specify how a party must show the presence or absence of a genuine dispute of material fact. And although our cases have been consistent in describing how and when the burden of production shifts between the moving and nonmoving parties on summary judgment,[15] we have been less consistent when describing how a movant can meet the initial burden of producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial in cases like this, where the opposing party will have the burden of proof at trial. As Clark correctly observes, some of our cases suggest that to meet the initial burden in such a case, movants must produce evidence that affirmatively refutes or negates the allegations against them, even on an issue with respect to which the opposing party will have the burden of proof at trial.[16]

---

[15] See, e.g., *Green, supra* note 13; *Borrenpohl v. DaBeers Properties*, 276 Neb. 426, 755 N.W.2d 39 (2008); *Builders Supply Co. v. Czerwinski*, 275 Neb. 622, 748 N.W.2d 645 (2008); *Pogge v. American Fam. Mut. Ins. Co.*, 272 Neb. 554, 723 N.W.2d 334 (2006); *Marksmeier v. McGregor Corp.*, 272 Neb. 401, 722 N.W.2d 65 (2006); *Lovette v. Stonebridge Life Ins.* Co., 272 Neb. 1, 716 N.W.2d 743 (2006); *NEBCO, Inc. v. Adams*, 270 Neb. 484, 704 N.W.2d 777 (2005); *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005*); Russell v. Bridgens*, 264 Neb. 217, 647 N.W.2d 56 (2002); *Melick v. Schmidt*, 251 Neb. 372, 557 N.W.2d 645 (1997).

[16] See, e.g., *Sweem v. American Fidelity Life Assurance Co.*, 274 Neb. 313, 739 N.W.2d 442 (2007) (to satisfy movant's initial burden, defendant insurer had to refute plaintiff's claim that she was totally disabled); *Roubideaux v. Davenport*, 247 Neb. 746, 530 N.W.2d 232 (1995) (defendant physician's affidavit did not satisfy movant's initial burden because it did not negate plaintiff's allegation that physician breached standard of care); *Hanzlik v. Paustian*, 211 Neb. 322, 328, 318 N.W.2d 712, 716 (1982) (reversing summary judgment in favor of physician, holding physician "failed to make a prima facie showing of the absence of negligence on his part, and therefore no burden of producing evidence shifted to the plaintiff"), *disapproved on other grounds, Anderson v. Service Merch. Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992).

Other cases, however, recognize that movants can satisfy their initial burden by showing that if the case proceeded to trial, the opposing party could not prove a material element of the claim.[17] It does not appear that our prior cases have discussed, or attempted to reconcile, the tension in these competing lines of authority. But the U.S. Supreme Court directly addressed the issue in *Celotex Corp. v. Catrett* (*Celotex*).[18]

*Celotex* involved a wrongful death lawsuit brought in federal district court against an asbestos manufacturer. The complaint alleged the decedent was exposed to the manufacturer's asbestos products, which caused his death. The manufacturer successfully moved for summary judgment, offering discovery that showed the decedent's estate was unable to produce evidence to support its allegation that the decedent was exposed to the manufacturer's asbestos products. The federal Court of Appeals reversed, reasoning the asbestos manufacturer had failed to make a prima facie case because it had not offered evidence affirmatively negating the estate's allegation of asbestos exposure. The U.S. Supreme Court granted certiorari to address whether a moving party could meet its initial burden under Rule 56 without offering evidence to affirmatively negate the opponent's claim.

Justice Rehnquist, writing for the majority, explained that in cases where the nonmoving party would bear the burden of proof at trial, there was "no express or implied requirement

---

[17] See, e.g., *Caguioa v. Fellman*, 275 Neb. 455, 460, 747 N.W.2d 623, 628 (2008) ("to be granted summary judgment, a defendant must show that one of the required elements of a plaintiff's case cannot be established"); *In re Estate of Nicholson*, 211 Neb. 805, 812, 320 N.W.2d 739, 743-44 (1982) (movant can meet initial burden by "'showing that if the case proceeded to trial his opponent could produce no competent evidence to support a contrary position'"); *Miller v. Aitken*, 160 Neb. 97, 100, 69 N.W.2d 290, 292 (1955) (movants can meet initial burden by showing they "would be entitled to a directed verdict" if evidence remained undisputed at trial).

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

in Rule 56 that the moving party support its motions with affidavits or other similar materials *negating* the opponent's claim."[19] The majority reasoned:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.[20]

The *Celotex* majority emphasized that one of the primary reasons for the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses," and it reasoned the rule "should be interpreted in a way that allows it to accomplish this purpose."[21] Elaborating on the role played by summary judgment in the current notice pleading regime, the majority explained:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole . . . . Before the shift to "notice pleading" accomplished by the Federal Rules, motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient claims or defenses could be isolated

---

[19] *Id.*, 477 U.S. at 323 (emphasis in original).

[20] *Id.*, 477 U.S. at 322-23.

[21] *Id.*, 477 U.S. at 323-24.

and prevented from going to trial with the attendant unwarranted consumption of public and private resources. But with the advent of "notice pleading," the motion to dismiss seldom fulfills this function any more, and its place has been taken by the motion for summary judgment. Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.[22]

Justice White concurred, but wrote separately to emphasize that even though a defendant could satisfy its initial burden by showing the plaintiff could not prove a material element at trial, this burden could not be met by offering only a "conclusory assertion that the plaintiff has no evidence to prove his case."[23] The dissenting justices in *Celotex* agreed with the majority's interpretation of Rule 56,[24] and the dissent authored by Justice Brennan concisely summarized the governing principles:

Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment. . . . The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial. If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at

---

[22] *Id.*, 477 U.S. at 327.

[23] *Id.*, 477 U.S. at 328 (White, J., concurring).

[24] See 10A Charles Alan Wright et al., Federal Practice and Procedure § 2727.1 at 485-86 (4th ed. 2016) (noting "the [*Celotex*] majority and dissent both agreed as to how the summary-judgment burden of proof operates" under Rule 56).

trial. . . . Such an affirmative showing shifts the bur-
den of production to the party opposing the motion and
requires that party either to produce evidentiary materi-
als that demonstrate the existence of a "genuine issue"
for trial or to submit an affidavit requesting additional
time for discovery. . . .

   If the burden of persuasion at trial would be on the
*nonmoving* party, the party moving for summary judg-
ment may satisfy Rule 56's burden of production in either
of two ways. First, the moving party may submit affirm-
ative evidence that negates an essential element of the
nonmoving party's claim. Second, the moving party may
demonstrate to the court that the nonmoving party's evi-
dence is insufficient to establish an essential element of
the nonmoving party's claim. . . . If the nonmoving party
cannot muster sufficient evidence to make out its claim, a
trial would be useless and the moving party is entitled to
summary judgment as a matter of law.[25]

Federal courts and legal commentators generally agree that
after *Celotex*, federal Rule 56(c) allows a summary judgment
movant to satisfy its initial burden in either of two ways: "it
can produce evidence negating an essential element of the
nonmoving party's case, or it can show that the nonmoving
party does not have enough evidence of an essential ele-
ment of its claim to carry its ultimate burden of persuasion
at trial."[26]

---

[25] *Celotex, supra* note 18, 477 U.S. at 331 (Stevens, J., dissenting) (emphasis
in original).

[26] *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). See, also, *Grimes v.
District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015) ("the burden on
a defendant moving for summary judgment may be discharged without
factual disproof of the plaintiff's case; the defendant need only identify
the ways in which the plaintiff has failed to come forward with sufficient
evidence to support a reasonable jury to find in her favor on one or more
essential elements of her claim"). Accord 10A Wright et al., *supra* note 24,
§ 2727.1.

In 2010, federal Rule 56(c) was amended to directly address the procedure for parties to show the presence or absence of a genuine dispute of material fact, and the amended federal rule incorporates the rule from *Celotex*.[27] Currently, Rule 56(c) provides in pertinent part:

(1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

This court has cited *Celotex*,[28] but we have not expressly adopted its reasoning. And post-*Celotex*, we have not revisited our line of cases that hold movants can only meet their initial burden by producing evidence that affirmatively refutes or negates the allegations against them, even on an issue with respect to which the opposing party will have the burden of

---

[27] See 10A Wright et al., *supra* note 24 (referring to language in Rule 56(c)(1)(B)). See, also, Rule 56 (advisory committee notes on 2010 amendments explain "a party who does not have the trial burden of production may rely on a showing that the party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

[28] See, *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 168, 871 N.W.2d 776, 793 (2015) (citing *Celotex* for proposition that "[f]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"), *disapproved on other grounds, Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019); *Anderson, supra* note 16 (citing *Celotex* when discussing proper standard to apply on summary judgment).

proof at trial. But as we explain next, any historical tension in our cases is merely academic now, because the 2017 legislative amendments to the summary judgment procedure in § 25-1332 effectively incorporated the provisions of Rule 56(c) and the *Celotex* rule into Nebraska law.

## 2. Legislature Amends § 25-1332

The Nebraska Legislature amended § 25-1332 in 2017 via 2017 Neb. Laws, L.B. 204, and after the amendments became effective, we enacted uniform court rules to support the new statutory procedures.[29] These amendments did not materially change either the summary judgment standard or the evidence that may be received on summary judgment.[30] But L.B. 204 did add two new subsections to § 25-1332: subsection (2) addresses how parties must support their assertion of the presence or absence of a genuine dispute of material fact and subsection (3) addresses the court's various options in addressing the motion.

As relevant here, subsection (2) of § 25-1332 uses language nearly identical to federal Rule 56(c) and provides:

> (2) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (a) Citing to particular parts of materials in the record, including depositions, answers to interrogatories, admissions, stipulations, affidavits, or other materials; or
>
> (b) Showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[29] See Neb. Ct. R. § 6-1471 (summary judgment procedure in county court) and Neb. Ct. R. § 6-1526 (rev. 2022) (summary judgment procedure in district court). See, also, *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020) (explaining reasons for uniform court rules governing summary judgment procedure).

[30] Compare § 25-1332 (Reissue 2016) with § 25-1332(1) (Cum. Supp. 2022).

Scheels argues that the plain text of § 25-1332(2)(b) now expressly allows moving parties to prove the absence of a genuine dispute of material fact by citing to materials in the record showing the adverse party cannot produce admissible evidence to support the fact. In light of this statutory language, Scheels argues there is no merit to Clark's contention that the only way it could meet its initial burden was to offer evidence affirmatively negating her allegations that there was a dangerous condition on its premises. Additionally, Scheels argues that by incorporating the language of federal Rule 56(c) into § 25-1332(2), the Legislature effectively adopted the authoritative reasoning of *Celotex*. We agree.

As Justice Felix Frankfurter once observed, "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it."[31] Nebraska has long recognized that our summary judgment statutes are patterned after federal Rule 56, and we take guidance from federal case law construing Rule 56 when construing similar provisions in Nebraska's summary judgment statutes.[32]

[5] We now hold, consistent with the plain and unambiguous text of § 25-1332(2) and guided by the reasoning of *Celotex*, that if the burden of proof at trial would be on the nonmoving party, then the party moving for summary

---

[31] Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947). Accord *In re Guardianship & Conservatorship of Woltemath*, 268 Neb. 33, 39, 680 N.W.2d 142, 148 (2004) (concluding that when Legislature enacted statute, it was aware of and was adopting U.S. Supreme Court's "authoritative explanation of the effect of [substantially identical federal] rule").

[32] See *Dennis v. Berens*, 156 Neb. 41, 43, 54 N.W.2d 259, 261 (1952) (recognizing that Nebraska's summary judgment statute "is patterned after Rule 56 of the Federal Rules of Civil Procedure" and "[t]he interpretations placed upon Rule 56 by the federal courts prior to the passage of the summary judgment act will have great weight, therefore, in our interpretation of the act").

judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Applying that framework here, we note the district court's order did not make an express legal finding that Scheels met its prima facie burden. But given our standard of review, it is not necessary to remand this cause to the trial court for such a determination, because an appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[33] And as we explain next, after viewing the evidence adduced by Scheels in the light most favorable to Clark and giving her the benefit of all reasonable inferences deducible from the evidence,[34] we conclude Scheels met its prima facie burden of producing enough evidence to show it would be entitled to judgment if the evidence were uncontroverted at trial.

### 3. Scheels Met Its Initial Burden

Clark's complaint alleged the condition that caused her fall was either an unsafe or poorly maintained foot grate in the foyer or a wind tunnel effect. To recover at trial under a premises liability theory, Clark must prove, among other things, that (1) Scheels either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) Scheels should have realized the condition involved an unreasonable risk of harm to

---

[33] *Sundermann, supra* note 2.

[34] See *id.*

lawful visitors; (3) Scheels should have expected that lawful visitors such as Clark either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) Scheels failed to use reasonable care to protect Clark against the danger; and (5) the condition was a proximate cause of damage to Clark.[35] Given these elements, proof that the alleged condition presented an unreasonable risk of harm is essential to Clark's recovery in this case.[36]

[6,7] There is no fixed rule for determining when a condition presents an unreasonable risk of harm, "[b]ut the plain meaning of the term suggests a uniquely or unacceptably high risk of harm—something more than the usual risks commonly encountered."[37] In the context of premises liability cases, an unreasonable risk of harm generally means ""'"a risk that a reasonable person, under all the circumstances of the case, would not allow to continue."'"'"[38]

In support of summary judgment, Scheels offered discovery materials showing that Clark either did not know or could not recall what caused her fall. Scheels argues that this fact alone showed that Clark could not recover at trial, but we disagree. Even a plaintiff who cannot recall the fall may be able to produce sufficient direct or circumstantial evidence from another source to show the fall was caused by one of the dangerous conditions alleged in the complaint.[39] But here, the discovery materials Scheels offered in support of summary judgment demonstrated more than just Clark's lack of memory regarding her fall; the materials also demonstrated a lack of evidence supporting Clark's allegations that either the foot

---

[35] See *id.*

[36] See, *id.*; *Williamson, supra* note 7.

[37] *Sundermann, supra* note 2, 306 Neb. at 768, 947 N.W.2d at 506.

[38] *Id.*

[39] See, e.g., *Hughes, supra* note 7; *Kotlarz v. Olson Bros., Inc.*, 16 Neb. App. 1, 740 N.W.2d 807 (2007).

grate or a wind tunnel effect in the foyer created an unreasonable risk of harm.[40] Absent direct or circumstantial evidence showing that one of the alleged conditions on Scheels' premises presented a uniquely or unacceptably high risk of harm beyond the ordinary risks encountered by lawful entrants on the premises, Clark could not prevail at trial on her premises liability claim.[41]

As such, Scheels did more than make a "conclusory assertion that the plaintiff has no evidence to prove [her] case,"[42] and instead, it cited to discovery materials in the record which, if uncontroverted, showed that Clark had no competent evidence to support one of the essential elements of her premises liability claim—an unreasonably dangerous condition in the foyer. Scheels therefore met its prima facie burden as the movant,[43] and there is no merit to Clark's assignment that the district court prematurely, or erroneously, shifted the burden to Clark to show a genuine issue of material fact precluding summary judgment.

### 4. Clark Failed to Show Genuine Dispute of Material Fact as to Existence of Unreasonably Dangerous Condition

Once the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[44] The statutory requirements in § 25-1332(2)(a) apply to this burden and provide in relevant

---

[40] See, e.g., *Hodge by and through Farrow v. Walgreens Co.*, 37 F.4th 461 (8th Cir. 2022) (defendant met initial summary judgment burden by showing plaintiff had no evidence to support claim that fall was caused by dangerous condition).

[41] See, *Sundermann, supra* note 2; *Williamson, supra* note 7.

[42] *Celotex, supra* note 18, 477 U.S. at 328 (White, J., concurring).

[43] See *Hodge by and through Farrow, supra* note 40.

[44] See *Porter, supra* note 7.

part: "A party asserting that a fact . . . is genuinely disputed must support that assertion by . . . [c]iting to particular parts of materials in the record, including depositions, answers to interrogatories, admissions, stipulations, affidavits, or other materials." With this framework in mind, we review the materials Clark cites to support her argument that there is a genuine dispute of material fact about whether an unreasonably dangerous condition on Scheels' premises caused her fall.

In opposing summary judgment, Clark cites to her deposition transcript, to the "Guest Injury Accident Report," and to her counsel's affidavit stating the entry doors were replaced in 2021. She argues that these exhibits, or the reasonable inferences from these exhibits, show a material factual dispute regarding the unreasonable dangerousness of two conditions: the foot grate and the entry doors. We limit our analysis accordingly; but before we address Clark's arguments, we pause to address her reliance on the proposition that summary judgment is "'an extreme remedy to be awarded only when an issue is clear beyond all doubt.'"[45]

[8] This court has already expressly disapproved of the elevated "'clear beyond all doubt'" standard that used to be a familiar part of our summary judgment jurisprudence, reasoning it is "inconsistent with the standard expressed in § 25-1332."[46] For the same reason, we see no principled reason to continue describing summary judgment as an "extreme remedy,"[47] at least where it is shown to have been properly granted. As the

---

[45] Brief for appellant at 9, quoting *International Harvester Credit Corp. v. Lech*, 231 Neb. 798, 438 N.W.2d 474 (1989).

[46] *Anderson, supra* note 16, 240 Neb. at 878, 485 N.W.2d at 174.

[47] See, e.g., *Green, supra* note 13, 284 Neb. at 252, 818 N.W.2d at 597 (2012) ("summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed").

U.S. Supreme Court recognized in *Celotex*, summary judgment should not be viewed as a disfavored procedural shortcut, but, rather, as an integral part of the procedural rules governing civil actions after the shift to notice pleading.[48] Summary judgment should never be used to deprive a litigant of a trial when there is a genuine issue of material fact to be determined.[49] However, when the summary judgment standard is properly, carefully, and cautiously applied to enter judgment as a matter of law on a claim or defense that is shown to be undisputed, it is not an extreme remedy at all; it is simply another procedural tool by which undisputed "claims or defenses c[an] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."[50]

### (a) No Evidence to Support Finding That Foot Grate Was Unreasonably Dangerous

Clark argues that the "Guest Injury Accident Report" indicates that immediately after her fall, while still lying in the foyer, she told Scheels' employees that she fell because her

---

[48] See *Celotex, supra* note 18.

[49] See, *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 927, 958 N.W.2d 378, 387 (2021) ("[s]ummary judgment should not be used to deprive a litigant of a formal trial if there is a genuine issue of material fact"), *disapproved on other grounds, Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022).

[50] *Celotex, supra* note 18, 477 U.S. at 327. See, also, *Doe v. Safeway, Inc.*, 88 A.3d 131, 133 (D.C. 2014) ("[s]ummary judgment may have once been considered an extreme remedy, but that is no longer the case"); *Curtis v. Porter*, 784 A.2d 18, 21-22 (Maine 2001) ("[s]ummary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding"). Accord 10A Wright et al., *supra* note 24, § 2712 at 253 (noting summary judgment must be used with due regard for its purposes but "cases voicing the sentiment that the courts should be slow to grant a summary judgment or that the motion should be granted very reluctantly and only in clear cases must be carefully evaluated in light of their facts").

shoelace got stuck in the foot grate. She argues that the injury report and her explanation reflected in that report would be admissible at trial and "constitute[s] evidence that she fell because her shoelace got caught in the floor grate."[51] She also argues that based on this evidence, "[a] jury could reasonably conclude the floor grate was unreasonably dangerous because it was capable of catching Clark's shoelaces and causing a severe and traumatic fall."[52]

[9] We express no opinion on the admissibility of the accident report or the reference therein to Clark's explanation for her fall, because this evidence describing how Clark fell, without more, does not show the foot grate was unreasonably dangerous or support a reasonable inference in that regard. A condition is unreasonably dangerous only if it presents "a uniquely or unacceptably high risk of harm—something more than the usual risks commonly encountered."[53] And the mere fact that a fall occurred is not evidence of negligence, nor does it raise a presumption of negligence.[54]

Moreover, the record contains no materials that support a reasonable inference that the foot grate presented an unreasonably dangerous condition. None of the witnesses deposed identified any feature of the foot grate specifically, or the foyer generally, that increased the danger of tripping or falling or otherwise presented an unreasonable risk of harm. None of the affidavits, depositions, or discovery responses indicated that

---

[51] Brief for appellant at 11.

[52] *Id*. at 12.

[53] *Sundermann, supra* note 2, 306 Neb. at 768, 947 N.W.2d at 506.

[54] See, *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003) (mere occurrence of accident which causes injury does not create presumption of negligence or authorize inference of negligence); *Porter v. Black*, 205 Neb. 699, 289 N.W.2d 760 (1980) (negligence is never presumed and burden of proving negligence is on party alleging it; merely establishing that accident happened does not prove negligence).

any witness would testify the foot grate presented an unreasonable risk of harm. The record contains no photographs, diagrams, or physical descriptions of the foot grate that might be offered as exhibits to support a reasonable inference that the grate was unreasonably dangerous. Nor was there evidence that others had fallen on the grate, or similar grates, that might arguably support a reasonable inference that the grate posed an unreasonable risk of harm.

[10,11] On this evidentiary record, we agree with the district court's observation that a fact finder would have to speculate to conclude that the foot grate presented an unreasonable risk of harm. And conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment; the evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork.[55] So while it is true that Clark is entitled to all reasonable inferences from the evidence in the record, we see nothing that would support a reasonable inference that the foot grate presented an unreasonably dangerous condition.[56] The failure of proof on this essential element of Clark's premises liability claim necessarily renders all other facts immaterial[57] and entitles Scheels to summary judgment as a matter of law.[58]

---

[55] *Kaiser v. Union Pacific RR. Co.*, 303 Neb. 193, 927 N.W.2d 808 (2019). See, also, *Ag Valley Co-op v. Servinsky Engr.*, 311 Neb. 665, 974 N.W.2d 324 (2022) (conclusions based on guess, speculation, conjecture, or choice of possibilities do not create material issues for purposes of summary judgment).

[56] See *Hodge by and through Farrow, supra* note 40 (fact that plaintiff tripped on sidewalk did not support reasonable inference that dangerous condition caused fall).

[57] See *Roskop Dairy, supra* note 28. Accord *Celotex, supra* note 18.

[58] See, *Sundermann, supra* note 2; *Williamson, supra* note 7.

(b) No Material Factual Dispute
Regarding Entry Doors

[12,13] As noted, Clark's complaint identified only two unreasonably dangerous conditions in the foyer that allegedly caused her fall: the foot grate and a wind tunnel effect. She does not contend the record shows a genuine dispute as to whether the wind tunnel effect created an unreasonably dangerous condition, and we have already explained why this record shows no genuine dispute as to whether the foot grate created an unreasonably dangerous condition. Generally, this would end our analysis, because the pleadings frame the issues to be considered on a motion for summary judgment,[59] and courts may not enter summary judgment on an issue not presented by the pleadings.[60]

[14] But one of Clark's main arguments in opposition to summary judgment is that there is a genuine factual dispute about whether a defective or malfunctioning entry door caused her fall. In the summary judgment context, a disputed fact is material only if it would affect the outcome of the case.[61] And since Clark's complaint did not allege the entry doors were a dangerous condition or played any role in her fall, it is difficult to understand how the condition of the entry doors could possibly affect the outcome of the case, absent significant amendments to the pleadings.

But even if we could read Clark's complaint to allege the entry doors somehow contributed to her fall, the materials in our record fail to show a genuine factual dispute about whether the doors are unreasonably dangerous. None of the depositions in the record identify any defect with the doors or any history of malfunctioning that might arguably support

---

[59] *Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998).

[60] *Green, supra* note 13; *Welsch, supra* note 59.

[61] *Jacob v. Nebraska Bd. of Parole*, 313 Neb. 109, 982 N.W.2d 815 (2022).

a reasonable inference the doors posed an unreasonable risk of harm. The affidavit of Clark's counsel stated only that the entry doors had been replaced several years after her fall; it did not aver the doors were defective, dangerous, or had ever malfunctioned. And none of the written discovery responses in the record indicate that any witness would testify, or any exhibit would show, that the entry doors malfunctioned or otherwise presented an unreasonable risk of harm. Finally, to the extent Clark argues that Scheels' "intentional spoliation of the entryway doors"[62] entitled her to an adverse inference that the entry doors were defective, the materials in our record do not contain the evidence of intentional or fraudulent destruction necessary to support a discovery sanction for the intentional spoliation of evidence.[63]

The district court was correct to conclude that nothing in this record shows a genuine issue of material fact regarding whether the entry doors were unreasonably dangerous.[64]

## VI. CONCLUSION

Viewing the evidence in the light most favorable to Clark and giving her the benefit of all reasonable inferences from the evidence, we determine the record shows a complete

---

[62] Brief for appellant at 21.

[63] See, *McNeel v. Union Pacific RR. Co.*, 276 Neb. 143, 753 N.W.2d 321 (2008) (only intentional destruction of relevant evidence will support inference that evidence would have been unfavorable to spoliator; inference does not arise where destruction was matter of routine with no fraudulent intent); *Richter v. City of Omaha*, 273 Neb. 281, 286, 729 N.W.2d 67, 72 (2007) ("presumption or inference arises, however, only where the spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent").

[64] See *Williamson, supra* note 7 (affirming summary judgment in favor of land possessor because record on summary judgment contained no evidence from which reasonable fact finder could infer plaintiff established that fall was caused by unreasonably dangerous condition).

absence of proof concerning an essential element of Clark's premises liability claim—namely, that an unreasonably dangerous condition on Scheels' premises caused her fall. The failure of proof on this essential element of Clark's premises liability case necessarily rendered all other facts immaterial and entitled Scheels to summary judgment in its favor. We therefore affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN, J., participating on briefs.
FREUDENBERG, J., concurs in the result.

HEAVICAN, C.J., dissenting.

I respectfully dissent. I disagree with the majority that by relying on only Clark's deposition testimony, Scheels made its prima facie case on summary judgment and showed its entitlement to judgment as a matter of law. Because of Scheels' absence of its prima facie showing, the burden to produce evidence did not shift to Clark and she was not required to reveal evidence she expected to produce at trial.[1] In my view, the majority departs from our long-existing precedent and the matter is not resolved by the recent amendment to Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2022).[2]

Even assuming that Scheels did satisfy its initial burden of production, when I view the evidence in the light most favorable to Clark, she showed the existence of a genuine dispute of material fact that prevents summary judgment. Whether an adverse inference can logically be drawn from the facts of this case presents an issue of fact properly determined by a finder of fact. Accordingly, I would reverse the district court's grant of Scheels' motion for summary judgment and remand the matter for further proceedings.

---

[1] See, *Benard v. McDowall, LLC*, 298 Neb. 398, 904 N.W.2d 679 (2017); *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

[2] See 2017 Neb. Laws, L.B. 204, § 3.

## SCHEELS' INSUFFICIENT SUMMARY
## JUDGMENT SHOWING

To begin, I agree with the majority that Scheels could have shown its entitlement to judgment as a matter of law by showing a failure of proof concerning an essential element of Clark's case.[3] When there is no question for the jury to decide, permitting a jury to speculate with the rights of a defendant is a denial of the defendant's right of trial by jury.[4] Yet, Clark also has an inviolate right of trial without unreasonable and unnecessary delay.[5] That is why we have historically viewed summary judgment as an extreme remedy.[6] Our interpretation of the summary judgment statutes and its procedure has been balanced between these constitutional guarantees.[7]

The party moving for summary judgment has the burden to show that no genuine dispute of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law if the evidence were

---

[3] See *Bedford v. Doe*, 880 F.3d 993, 996-97 (8th Cir. 2018) (stating that "if the nonmoving party must prove $X$ to prevail, the moving party at summary judgment can either produce evidence that $X$ is not so or point out that the nonmoving party lacks the evidence to prove $X$").

[4] See *Smith v. Epstein Realty Co.*, 133 Neb. 842, 277 N.W. 427 (1938). See, also, Neb. Const. art. I, § 6.

[5] See Neb. Const. art. I, §§ 6 and 13. See, also, *Sullivan v. Storz*, 156 Neb. 177, 55 N.W.2d 499 (1952); *Kuhl v. Pierce County*, 44 Neb. 584, 62 N.W. 1066 (1895). Cf. *Wagener v. Whitmore*, 79 Neb. 558, 113 N.W. 238 (1907).

[6] See *Green v. Box Butte General Hosp., supra* note 1. See, also, *Miller v. Aitken*, 160 Neb. 97, 69 N.W.2d 290 (1955). See, generally, Marcus Gadson, *State Constitutions and Summary Judgment*, 68 UCLA L. Rev. 988 (2021).

[7] See *Green v. Village of Terrytown*, 189 Neb. 615, 204 N.W.2d 152 (1973). See, also, Statement of Purpose, L.B. 144, Judiciary Committee, 62d Sess. (Feb. 27, 1951) (purpose is to speed up administration of justice). See, generally, Kenneth P. Keene, Comment, *Summary Judgments in Nebraska*, 44 Neb. L. Rev. 82 (1965).

uncontroverted at trial.[8] The absence of a genuine dispute as to any material fact and entitlement to judgment as a matter of law are prerequisites to a summary judgment.[9] It is only where false allegations have been pierced, and the real facts show that there is no genuine issue to be determined, that summary judgment may be employed to prevent vexatious delay and permit the expeditious disposition of cases.[10]

I do not read the amendment of § 25-1332 changing "genuine *issues*" to "genuine *disputes*" to have made a substantive change to this precedent.[11] Furthermore, subsection (2) requires that "[a] party asserting that a fact cannot be . . . disputed *must support the assertion* by . . . [s]howing . . . that an adverse party cannot produce admissible evidence to support the fact."[12] To satisfy the summary judgment burden, a movant does not need to affirmatively negate or undermine an element of the nonmovant's claim. But a party still must make an affirmative showing in support of its assertion that a fact cannot be genuinely disputed. That showing requires a party to, at a minimum, point the district court to a source reasonably expected to contain admissible evidence that would support the fact in question. Otherwise, the movant has failed to produce sufficient evidence to demonstrate that it is entitled

---

[8] *Estate of Block v. Estate of Becker*, 313 Neb. 818, 986 N.W.2d 726 (2023). See *Dennis v. Berens*, 156 Neb. 41, 54 N.W.2d 259 (1952).

[9] See *Stolte v. Blackstone*, 213 Neb. 113, 328 N.W.2d 462 (1982). See § 25-1332(1).

[10] *Healy v. Metropolitan Utilities Dist.*, 158 Neb. 151, 62 N.W.2d 543 (1954). See *Porter v. Knife River, Inc.*, 310 Neb. 946, 970 N.W.2d 104 (2022).

[11] See, Judiciary Committee Hearing, L.B. 204, 105th Leg., 1st Sess. 56 (Feb. 15, 2017) (Senator Mike Hilgers stating that "I think in some instances tradition should be codified. [It] really doesn't change the standard"); Floor Debate, L.B. 204, 105th Leg., 1st Sess. 57 (Apr. 20, 2017) (Senator Hilgers stating that it "helps just clarify and doesn't really change the law").

[12] § 25-1332(2) (emphasis supplied).

to judgment as a matter of law if the evidence were uncontroverted at trial. In failing to do so, the movant did not pierce the pleadings, and the real facts do not show that there is no genuine dispute to be determined.

Although the summary judgment statutes allow Scheels to assert its right and avoid trial, Scheels still had the burden to pierce Clark's pleading and show that no genuine dispute of material fact existed and that it would be entitled to judgment as a matter of law. I agree with the majority in holding that Scheels could satisfy its burden on summary judgment "by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[13] As the majority notes, after the amendment to § 25-1332, we enacted court rules to support its new statutory procedures. Relevant here is Neb. Ct. R. § 6-1526 (rev. 2022), which provides in part:

(A) Moving Party's Materials in Support of Motion. When a motion for summary judgment or partial summary judgment is filed, the moving party must simultaneously file with the clerk and serve on all parties of record:

(1) an Evidence Index in Support listing all evidence to be offered in support of the motion for summary judgment; and

(2) an Annotated Statement of Undisputed Facts setting forth concise, numbered paragraphs reciting each proposed material fact as to which the moving party contends there is no genuine dispute, annotated by pinpoint citation to the supporting evidence in the Evidence Index in Support.

---

[13] See, generally, Adam N. Steinman, *The Irrepressible Myth of* Celotex*: Reconsidering Summary Judgment Burdens Twenty Years After the Trilogy*, 63 Wash. & Lee L. Rev. 81 (2006).

Scheels' evidence index listed all the evidence it offered in support of its motion. Scheels offered (1) Clark's complaint, (2) Scheels' answer, (3) Clark's deposition, (4) Clark's supplemental responses to Scheels' requests for production of documents, and all the pleadings on file. In its annotated statement of undisputed facts, Scheels recited 13 material facts that purported to entitle it to judgment as a matter of law. They were as follows:

1. At all relevant times herein, Plaintiff, Kristine Clark ("Plaintiff") was a resident of Douglas County, Nebraska. [Plaintiff's Complaint 1].

2. Defendant is a North Dakota Corporation doing business in Douglas County, Nebraska. [Plaintiff's Complaint 2; Defendant's Answer 2].

3. Plaintiff has alleged that on April 18, 2016, she sustained injuries to her hip in a fall while entering Defendant's premises [Plaintiff's Complaint 5; Defendant's Answer 5].

4. In her Complaint Plaintiff alleged that her shoelace got caught in Defendant's "foot grate in the store foyer between the outside and inside doors" [Plaintiff's Complaint 5].

5. Plaintiff does not know what shoes she was wearing on the date of the fall [Plaintiff's Deposition pg. 27: 2-13, pg. 28:1-14; Plaintiff's Supplemental Response to Defendant's Request for Production of Documents ¶22].

6. Plaintiff no longer has the shoes she was wearing on the date of the incident [Plaintiff's deposition pg. 27:10-13].

7. Plaintiff generally does not wear shoes with shoestrings and does not believe she was wearing shoes with shoestrings or laces on the date of the incident. [Plaintiff's Deposition, pg. 27:4-12; 28:17-29:13].

8. Plaintiff does not know what caused her to fall on Defendant's premises [Plaintiff's deposition pg. 29: 5-8, 30:18-22, 68: 19-25, 69: 1-20, 122: 21-25, 123: 1-9, 123: 6-25, 124: 1-25; 126:2-14].

9. Plaintiff does not know if she tripped on anything. [Plaintiff's deposition pg. 126:5-10].

10. Plaintiff does not know if the door malfunctioned. [Plaintiff's deposition pg. 126:2-4]

11. Plaintiff does not know if someone "jumped" her. [Plaintiff's deposition pg. 126:11-12].

12. Plaintiff does not know if someone pushed her. [Plaintiff's deposition pg. 126:13-14].

13. Plaintiff did not inspect the area where she fell after the fall. [Plaintiff's deposition pg. 126:15-23).

Assuming all the facts in Scheels' statement are true, I fail to see how Scheels has demonstrated that it is entitled to judgment as a matter of law. Based on its showing, Scheels has only demonstrated that Clark did not know, or could not recall, what caused her fall.

It is true that merely establishing that an accident happened does not prove negligence or raise a presumption of negligence,[14] but there is also no presumption that an unreasonable risk of harm did not exist.[15] It is one thing for Scheels to show an absence of evidence of an unreasonable risk of harm; it is very different to merely aver that one cannot be proved. After all, statements as to opinion, belief, or conclusions of law are of no effect on summary judgment.[16]

The essence of Scheels' contention, which it admitted at oral argument, is that the evidence of no unreasonable risk of harm was that there was no evidence of an unreasonable risk of harm. But Scheels' logic fails. Scheels' assertion is a "negative pregnant,"[17] which we have long rejected as

---

[14] *Estate of Block v. Estate of Becker, supra* note 8.

[15] See, *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020); *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019).

[16] *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999); *Eden v. Klaas*, 165 Neb. 323, 85 N.W.2d 643 (1957).

[17] Black's Law Dictionary 1244 (11th ed. 2019) ("[a] denial implying its affirmative opposite by seeming to deny only a qualification of the allegation and not the allegation itself").

insufficient in a court of law.[18] Inherent within Scheels' argument is that an unreasonable risk of harm may very well have been present and caused Clark to fall.

It seems to be overlooked that material issues are not created on summary judgment; they are created by the pleadings.[19] In her complaint, Clark alleged that her "diminished memory" would "preclude [Clark] from presenting credible evidence that her fall occurred in the manner she claims." On summary judgment, Scheels contended in its statement of undisputed facts that it was entitled to summary judgment because Clark did not know what caused her to fall, if she tripped on anything, if the door malfunctioned, if someone "jumped" her, or if someone pushed her. Scheels cited to Clark's deposition testimony, wherein she stated, "I just — I just remember going in, and I — I don't remember anything else that happened. I don't know — I just — I thought to myself, 'Did somebody jump me,' or 'Did the door malfunction,' or somebody push me,' or . . . ." And later, she stated:

> [Q.] Do you recall telling any doctors that — that the doors at Scheels made any contact with you?
>
> A. I — like I said to you at the beginning, I thought somebody jumped me, the door hit me, something made me black out and crash like that.
>
> . . . .
>
> . . . But if I said something like that to her — if you have the record on it, then I — I mean, maybe she

---

[18] *Harden v. A & N. R. R.*, 4 Neb. 521, 523 (1876) ("'[a] defendant must answer the charges directly, without evasion, and not by way of negative pregnant'"). See, also, Samuel Maxwell, Chief Justice of the Supreme Court of Nebraska, Treatise on the Law of Pleading Under the Code of Civil Procedure, Designed for All the Code States With Forms and Directions 389 (1892) (denial should be clear and direct, and not in form of "negative pregnant").

[19] See Neb. Rev. Stat. §§ 25-1101 and 25-1102 (Reissue 2016). See, also, *City State Bank v. Holstine*, 260 Neb. 578, 618 N.W.2d 704 (2000); *Sherrets, Smith v. MJ Optical, Inc.*, 259 Neb. 424, 610 N.W.2d 413 (2000).

asked me what I thought happened, and I said, you know the door hit me. Something hit me.

In response to Scheels' statement of undisputed facts, most unsurprisingly, Clark admitted that those facts were not disputed.

Scheels' "showing" of its entitlement to judgment consisted only of proving an allegation in Clark's complaint. It is an elementary rule of pleading that matters admitted by the pleadings need not be proved.[20] By producing evidence that only proved that Clark suffered from a diminished memory, Scheels did not pierce Clark's pleading. If Scheels was entitled to judgment as a matter of law based on such a showing, there was no need for the parties to engage in any discovery. The pleadings showed that Clark was never going to prove her claim through her own testimony at trial. It is not permissible for a party to prevail on summary judgment simply by pointing to the other party's lack of memory of the alleged event. This is especially true when the claim alleged includes the essential element that the plaintiff would not discover or realize the danger, a danger which may have caused the admitted memory loss. Likewise, there is no merit to Scheels' assertion that it is entitled to judgment because Clark did not inspect the vestibule between the time she fell and when emergency responders carted her away approximately 15 minutes later.

I agree with the majority that Clark's lack of memory is not enough to show that Clark could not recover at trial. But I fail to see how "the discovery materials Scheels offered in support of summary judgment demonstrated more than Clark's lack of memory regarding her fall." Despite Scheels' claims to the contrary on appeal, the only evidence Scheels produced and cited to on summary judgment in support of its entitlement to judgment was Clark's deposition testimony, and nowhere in that testimony does Clark admit that she cannot prove

---

[20] *Lewison v. Renner*, 298 Neb. 654, 664, 905 N.W.2d 540, 548 (2018).

her claim.[21] In the absence of such an admission, by only producing Clark's deposition testimony, Scheels failed to show that Clark could not establish an essential element of her claim. It is my view that Scheels did not produce sufficient evidence to demonstrate its entitlement to judgment as a matter of law. Consequently, its motion for summary judgment should have been denied.

## VIEWING EVIDENCE IN LIGHT MOST FAVORABLE TO CLARK

Even assuming Scheels' showing was sufficient to shift the burden of production to Clark, when I view the evidence in the light most favorable to Clark, she produced evidence that prevented summary judgment. Clark was entitled to have all reasonable inferences drawn in her favor.[22]

In her complaint, in addition to alleging that her "shoelace got caught in the foot grate," Clark alleged that her injury was caused by Scheels' negligence "in one or more of the following particulars:"

> a. Failing to ensure that Scheels' patrons had safe ingress and egress to the store;
>
> b. Failing to install a safe foot grate or maintain its foot grate in a safe manner when it knew or should have known that its foot grate created a falling hazard for the public generally and for the plaintiff in particular;
>
> c. Failing to take precautions against the wind tunnel effect at the store's entryway when it knew or should have known that strong wind at the entryway increased the falling hazard for the public generally and for the plaintiff in particular; and
>
> d. Other acts or omissions that are identified during pre-trial discovery.

---

[21] See § 25-1332(1).

[22] See *Estate of Block v. Estate of Becker, supra* note 8.

On summary judgment, Clark's relevant allegations were that Scheels' floor grate or doors presented an unreasonable risk of harm. Clark produced the "Guest Injury Accident Report," which stated that Clark said "she fell because her shoelace got caught in the grate" and that when an employee arrived on the scene, one of her shoelaces was untied. Clark's excited utterance and the employee's statement documented in Scheels' accident report are competent evidence.[23] Clark's testimony as to what she felt and what she was thinking is also competent evidence. Lay witness opinion testimony in the form of opinions or inferences is competent evidence when it is rationally based on the perception of the witness and helpful to a clear understanding of his or her testimony or the determination of a fact in issue.[24] The evidence Clark produced raised issues of credibility and weight for a finder of fact to resolve and precludes summary judgment.[25] Any focus on what the record does not contain is a determination of the weight and credibility of the evidence that is in the record.

The majority's position is that a reasonable inference of an unreasonable risk of harm cannot be drawn from a description of how Clark fell. I disagree. Based on the manner in which the fall occurred, and the injuries Clark sustained, especially when considering the absence of evidence produced by Scheels, a jury could draw a logical inference that an unreasonable risk of harm existed and caused Clark's fall. After all, Clark did not need to overcome a presumption. Even if floor grates and doors do not ordinarily present unreasonable risks of harm, shoelaces do not ordinarily get trapped in floor grates, doors do not ordinarily close with such force as to throw someone to the floor, and falls do not ordinarily result in femoral

---

[23] See Neb. Rev. Stat. § 27-803(1) and (4) (Reissue 2016).

[24] Neb. Rev. Stat. § 27-701 (Reissue 2016).

[25] See, *Lingenfelter v. Lower Elkhorn NRD*, 294 Neb. 46, 881 N.W.2d 892 (2016); *Ransdell v. Sixth Street Food Store*, 174 Neb. 875, 120 N.W.2d 290 (1963); *Illian v. McManaman*, 156 Neb. 12, 54 N.W.2d 244 (1952).

neck fractures. Clark was entitled to rely on circumstantial evidence to prove her claim and was not required to present direct evidence of an unreasonable risk of harm.

In light of Scheels' failure to produce any evidence that an unreasonable risk of harm was not present and its persistent efforts to impede discovery, it is also only logical that a fact finder could draw an inference that an unreasonable risk of harm existed and caused Clark's fall. The burden of production on summary judgment is not high. Yet, Scheels did not, or could not, produce an affidavit of any knowledgeable person to testify to the absence of an unreasonable risk of harm. Still, Scheels persisted in moving for summary judgment on multiple occasions with no evidence showing the nonexistence of an unreasonable risk of harm, evidence that Scheels was uniquely capable of producing if indeed there was no unreasonable risk of harm.

In addition, Scheels' conduct related to the lengthy discovery process, beginning even before the action was filed, cannot be ignored. Scheels preserved its surveillance video on the day of Clark's fall. Yet, it provided the video to Clark only after she made multiple requests spanning over 14 months. After taking Clark's deposition, Scheels objected to various requests for discovery made by Clark. These requests were on the topics of repairs and service work of Scheels' vestibule, the entranceway doors, and the floor grates, including requests for copies of documentation related to the installation, manufacture, and model or design type of the doors and floor grates; any complaints or injuries related to the doors and floor grates; and any applicable policy, instruction, or procedure for inspection, maintenance, or repair. Scheels objected to these discovery requests as "overly broad, not reasonably calculated to the discovery of admissible evidence, and not proportional to the issues/needs of the case based upon [Clark's deposition] testimony." But it is the pleadings that frame the

issues, not deposition testimony.[26] Moreover, Scheels replaced its vestibule doors either while Clark's related motion to compel was pending before the district court or shortly after the motion had been granted.

On that basis, a logical inference can be drawn that Scheels intentionally destroyed evidence. Further, I am not convinced that our precedent on spoliation applies, or should apply, in civil cases when our standard was set forth in the context of a criminal due process challenge.[27] Even then, our precedent only holds that routine destruction is not intentional destruction.[28] There is nothing in the record to suggest that Scheels' replacement of its doors was routine, particularly when Scheels did not do so in the years leading up to Clark's motion to compel. There is no presumption of routine destruction that Clark needed to overcome. Based on Scheels' actions, I believe Clark should have been able to argue her case to a fact finder and allow the fact finder to draw whatever logical inferences were warranted in light of the evidence adduced. By extension, Clark was entitled to have those inferences drawn in her favor on summary judgment.

The majority reads Clark's complaint as failing to allege that the entry doors were a dangerous condition or played any role in her fall. The rationale for our liberal notice pleading standard in civil actions is that when a party has a valid claim, he or she should recover on it regardless of a failure to perceive the true basis of the claim.[29] I read Clark's complaint to have sufficiently alleged that the doors presented

---

[26] See § 25-1101.

[27] See *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002). See, also, *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999). See, generally, Annot., 121 A.L.R.5th 157 (2004); Annot., 102 A.L.R.5th 99 (2002).

[28] See, *Richter v. City of Omaha*, 273 Neb. 281, 729 N.W.2d 67 (2007); *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).

[29] *Burklund v. Fuehrer*, 299 Neb. 949, 911 N.W.2d 843 (2018).

an unreasonable risk of harm by alleging that Scheels failed to take precautions against a "wind tunnel" effect that increased the risk of falls. Scheels' conduct during pretrial discovery impeded Clark's ability to identify the true basis of her claim.

## CONCLUSION

I agree with my colleagues that Clark's case is far from solid. I do not mean to intimate that Scheels might not have been entitled to a directed verdict at trial. But here, we have a motion for summary judgment, which requires that the evidence produced be viewed in the light most favorable to Clark and that she be given the benefit of all reasonable inferences. It is not the role of the court to weed out unmeritorious cases from its docket. Clark was not required to show that her case was likely to ultimately succeed on the merits to survive summary judgment. Scheels was required to demonstrate that it was entitled to judgment as a matter of law. Based on the uncontroverted evidence in the record before us, Clark should have had the opportunity to present the totality of her evidence at trial.[30] It is my opinion that the summary judgment standard was not properly, carefully, and cautiously applied in this case. Hence, I would reverse the district court's grant of summary judgment and remand this matter for further proceedings.

MILLER-LERMAN, J., joins in this dissent.

---

[30] See *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997) (Lanphier, J., dissenting; Gerrard, J., joins).