**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2019**

# In the Court of Appeals of Georgia

A18A1719.   HALL   et   al.   v.   NOBLE-INTERSTATE   GS-064
      MANAGEMENT GROUP, LLC et al.

Goss, Judge.

This appeal arises from the trial court's grant of summary judgment to Noble-Interstate Management Group, LLC, and other defendants (collectively, the "Defendants") in this premises liability action. Richard and Kirsten Hall sued following an incident in which Richard Hall fell and injured himself in the bathtub of a hotel owned, managed, or operated by the various Defendants. On appeal, the Halls challenge the trial court's conclusion that they failed to show that the premises were defective or hazardous. Because material questions of fact are present, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo

standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Footnotes omitted). *Courter v. Pilot Travel Centers, LLC*, 317 Ga. App. 229, 229 (730 SE2d 493) (2012).

The record shows that in April 2013, Richard Hall was staying at the hotel in Atlanta with a friend while in town for a sporting event. The friend showered, and did not mention anything about the tub being slippery. Then Hall got into the hotel shower for the first time. He deposed that he had almost finished washing himself, "soaped [his] second foot and put it down . . . [and] it was like standing on ice almost." He deposed that "there probably was still some soap" on his foot. He lost his balance and fell, injuring himself and hitting his knee, hip, arm, and head. At that time, he did not notice whether the tub had any non-slip surface. He did not immediately experience any major pain or notice a major bump on his head. He briefly lost consciousness and immediately experienced "the cartoonish seeing stars thing[,]" and it took him 30 seconds to a minute to orient himself. After Hall returned home, however, he had a headache and experienced blurred vision and nausea, and went to urgent care. The Halls first reported the incident to hotel staff two days after

Richard Hall fell. Kirsten Hall spoke to the hotel's general manager. Kirsten Hall deposed that the manager told her that there were no traction strips in the shower, that the hotel was being renovated, and that the room should not have been rented. The general manager, Bert Haifley, deposed that he did not remember discussing traction strips or tub surfaces with Kirsten Hall. He deposed that the bathtubs came from the manufacturer with a built-in nonslip surface, and identified the dark lines in the photographs he was shown as that nonslip surface.

After his fall, Richard Hall took photographs of the bottom of the tub. As he contends in his appellate brief, from his "untrained eye, the tub displayed slight darkened streaks where non-slip strips used to be." He deposed that "[t]here was nothing there [in the bottom of the tub] . . . just pure whatever it was made of, ceramic, porcelain. I don't know. I'm not a tub expert[,]" and also that when looking at the photographs he had taken, he saw "discolorations that looked like where possibly there used to be [anti-skid] strips." The photograph Hall took shows six stripes, which are darker than the surrounding porcelain, running the length of the tub.

The evidence shows that the hotel tubs were under renovation when Hall fell. The tub in his room was resurfaced after he fell. Durand Johnson, an employee with

3

Nobel-Interstate Management, who served as the hotel's director of engineering, deposed that Porcelain Innovations had been hired to resurface the tubs because the hotel was having problems in that the tubs looked dirty. Specifically, Johnson testified that because the "nonslip that's built in the tub was starting to come through. You could see the little round circles. They looked like stain, but it was not. It was an anti-slip. The inside of the tub started to look gray. The porcelain was wearing off the tubs." He also deposed that the hotel had been evaluated for repairs by at least two companies, which proposed either repainting the tubs or resurfacing the bottom, and that both options included the installation of ASTM certified slip-resistant bottoms. The hotel chose the option of resurfacing the bottoms.

In addition to Haifley, Johnson and two people associated with the tub renovation company all deposed that the bathtubs at the hotel had a non-slip surface that does not wear out, and that only the porcelain around that non-slip surface was wearing out. These witnesses stated that the tub resurfacing was for cosmetic, rather than safety reasons.

1. First, the Halls argue that the trial court erred in finding that they failed to meet their burden of showing that the bathtub was a hazard presenting an unreasonable risk of harm.

4

They contend that because they identified standards and ordinances that the hotel violated by not having a non-slip surface in the tub, they showed that Richard Hall encountered a hazard presenting an unreasonable risk of harm.

> An owner or occupier of land has a statutory duty to keep its approaches and premises in a reasonably safe condition for invitees. But an owner or occupier of land is not an insurer of the safety of its invitees. Rather, in premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a proprietor. The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not.

(Citation and footnote omitted.) *Leavins v. Nayan Corp.*, 344 Ga. App. 417, 420 (2) (a) (810 SE2d 324) (2018). See also OCGA § 51-3-1.

First, the Halls have presented a fact question as to whether the tub had any nonslip surface. It is undisputed that the tub at issue had no mat in it, as Defendants note in their brief. What is in dispute is whether the tub had any other traction and whether the condition of the tub presented an unreasonable hazard. Richard Hall, while acknowledging that he was not a tub expert, deposed that the tub had no traction, only dark striping where possibly traction strips used to be. By contrast,

5

witnesses either employed by the hotel or by the renovation company deposed, variously, that the dark stripes were traction strips built into the tub which do not wear out and cannot be removed, and that only the porcelain surrounding those traction strips had worn out, making the tub look dirty. The trial court found that "the record shows undisputed evidence that Defendants' bathtub's built-in anti-slip surface is not subject to deterioration over time." However, the Halls have presented evidence pointing to a fact question about whether the tub contained *any* anti-slip surfacing. Pretermitting whether Richard Hall's testimony as to the dark striping was speculative or conclusory, see *Shadburn v. Whitlow*, 243 Ga. App. 555, 556 (533 SE2d 765) (2000) (plaintiff failed to show causation and presented only speculation where she and two witnesses testified that while they believed loose carpeting caused plaintiff's fall, they were not sure what caused fall and plaintiff may have fallen because she was inebriated), the Halls point to other, conflicting testimony about the tub's surface. Specifically, Kirsten Hall deposed that the hotel's general manager, Haifley, told her that the hotel's bathrooms were being renovated, and, as she recalled it, that "there were *no traction strips* in that shower; that the room should not have been occupied this past weekend[.]" (Emphasis supplied.) Haifley, by contrast, deposed that while he remembered talking with Hall's wife, he did not remember

6

discussing traction strips or tub surfaces. Viewing this in the light most favorable to the Halls as the non-movants, *Courter*, 317 Ga. App. at 229, this conflicting testimony presents a fact question as to whether the tub contained built-in, functioning traction strips, as the Defendants contend, or contained no traction at all, as the Halls contend.

As stated above, the basis of the Defendants' liability to the Halls, if any, would be the Defendants' "superior knowledge of a condition that may expose the invitees to *an unreasonable risk of harm*." (Citation omitted; emphasis in original). *Leavins*, 344 Ga. App. at 240 (1) (a). While Defendants presented evidence that they were unaware of prior bathtub slip-and-falls at the hotel and that the tub resurfacing was for cosmetic, rather than safety reasons, violations of codes and regulations may be negligence per se, "and evidence of nonconformity with code standards may be proof of the landowner's superior knowledge of a defect under OCGA § 51-3-1." (Punctuation and footnote omitted.) *Hicks v. Walker*, 262 Ga. App. 216, 218 (585 SE2d 83) (2003). Unlike the plaintiffs in other bathtub slip-and-fall cases cited by Defendants, see *Leavins*, 344 Ga. App. at 419-420 (1) and *Bryant v. DIVYA, Inc.*, 278 Ga. App. 101, 102-103 (628 SE2d 163) (2006), in which this Court upheld grants of summary judgment to the hotel-defendants, the Halls have pointed to regulations

7

related to hotel/motel bathroom safety that they allege were violated by the Defendants. The Halls argue that the hotel violated industry standards requiring "[a]nti-slip tubs, slip strips, appliques, or slip-proof mats" on the floor of the bathtub, and point to regulations cited by the Defendants below, the Fulton County Code of Ordinances and Resolutions, Rules of Department of Human Resources, Tourist Accommodations, Chapter 290-5-18.06 (11).[1] They additionally point to the ASTM standards for the "minimum 'static coefficient of friction' of .04" for bathtubs. See generally *Womack v. Oasis Goodtime Emporium I*, 307 Ga. App. 323, 328-330 (2) (705 SE2d 199) (2010) (outlining standards for showing negligence per se). The Halls have at least raised a jury question as to whether the Defendants violated hotel/motel safety codes. Compare *Leavins*, 344 Ga. App. at 421 (2) (a) (hotel guest offered no evidence that shower violated applicable safety codes).

As noted above, Richard Hall deposed that while he was showering, after he "soaped [his] second foot and put it down . . . it was like standing on ice almost." He deposed that "there was probably still some soap" on his foot, and "I just lost my

---

[1] On appeal and in their own responses below, the Halls cited to Ga. Comp. R. & Regs. r. 5-6-2-.08 (10). However, Richard Hall slipped and fell on April 6, 2013, and these rules did not go into effect until January 1, 2014. See Ga. Comp R. & Regs. r. 511-6-2.23 ("These regulations shall become effective on January 1, 2014") and *Leavins*, 344 Ga. App. at 419-420 (1) (recognizing effective date).

balance and there was nothing to grab onto and so I fell." From the above evidence, a jury could find, for example, that Richard Hall fell because of the soap on his foot. Or, a jury could find that Richard Hall fell because, as he deposed, "there was nothing to grab onto." Alternatively, a jury could find that Richard Hall fell because there was an unreasonable risk of harm in that Defendants' tub did not have proper or regulation-compliant traction. Because the evidence here is "not plain, palpable, and undisputed," material questions of fact exist which are not suitable for summary adjudication. (Citation and punctuation omitted.) *Pylant v. Samuels*, 262 Ga. App. 358, 361 (2) (585 SE2d 696) (2003).

2. Because of our determination in Division 1, we need not address the Halls' remaining contentions of error.

*Judgment reversed. Miller, P. J., and Brown, J., concur.*