Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/04/2023 09:11 AM CDT

407 N 117 Street, LLC, appellant, v.
Marc Harper and Art McGill, appellees.

___ N.W.2d ___

Filed August 4, 2023.    No. S-22-610.

1.  **Summary Judgment: Appeal and Error.** An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

2.  **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

3.  **Corporations: Liability.** Generally, a corporation is viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation.

4.  **Corporations: Fraud.** A court will disregard a corporation's identity only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another.

5.  **Corporations.** A corporation's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears.

6.  **Corporations: Proof: Fraud.** A plaintiff seeking to pierce the corporate veil must allege and prove that the corporation was under the actual control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights.

7.  **Summary Judgment.** Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

8.  **Summary Judgment: Pleadings.** The pleadings frame the issues to be considered on a motion for summary judgment.

9. **Summary Judgment.** One of the primary purposes of summary judgment is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled.

10. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial.

11. ____: ____. If the burden of proof at trial would be on the nonmoving party, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Jason M. Bruno and Thomas G. Schumacher, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Gabreal M. Belcastro and John M. Lingelbach, of Koley Jessen, P.C., L.L.O., for appellees.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## I. INTRODUCTION

A landlord sued a commercial tenant for nonpayment of rent and recovered a judgment, which the commercial tenant has failed or refused to pay. Accordingly, the landlord brought this action against a nonshareholder officer and a nonshareholder former director, seeking to pierce the corporate veil

of the commercial tenant. The district court granted summary judgment in favor of the officer and the former director. The landlord appeals. For the reasons discussed below, we affirm.

## II. BACKGROUND

### 1. Facts

The landlord, 407 N 117 Street, LLC (407), is a Nebraska limited liability company and the owner of certain property located at 407 North 117th Street in Omaha, Nebraska. In February 2007, 407 leased this property to the entity Planet Group for a 7-year term. Planet Group is a Nebraska corporation and the parent company of several subsidiary software companies. Generally, the revenues of the subsidiary companies were consolidated and funded that corporation.

In August 2013, Planet Group exercised a lease option for an additional 5-year term, which began June 2, 2014, and ended May 31, 2019. Planet Group executed the lease option through its then vice president of finance and administration, David B. Gerhauser, Jr.

In February 2014, nearly 6 months after Planet Group exercised its lease option, Art McGill was appointed to Planet Group's board of directors. Over 2 years later, Marc Harper was appointed treasurer of Planet Group. Harper transitioned to president of Planet Group in March 2017 to assist with the winding down of Planet Group's affairs. McGill resigned from Planet Group's board of directors in 2018, but Harper remains its corporate president.

At certain points, both Harper and McGill participated in and made official decisions, including financial decisions, on behalf of Planet Group. McGill was still a member of the board during Planet Group's sale of two of its subsidiary companies for "six figures into seven figures" each. As Planet Group's president, Harper presently makes financial decisions on that corporation's behalf. However, neither Harper nor McGill was part of Planet Group when it was incorporated, when it

entered into its lease, or when it exercised the lease option. Additionally, neither Harper nor McGill has been a shareholder of or received a salary from Planet Group.

Over 90 percent of Planet Group's shares are owned by the limited liability company West Partners. West Partners makes decisions on behalf of Planet Group and has been a secured creditor of Planet Group. Harper and McGill have both been "partner[s]" of West Partners. Both acknowledge having been part of a group of people who made decisions on behalf of West Partners. Harper became involved with West Partners in 2011 or 2012, and McGill became involved with West Partners in 2013. McGill ceased his involvement with West Partners in 2018.

In or around 2018, Planet Group faced at least two major payment obligations, namely its repayments to West Partners and its lease payments to 407. By 2018, West Partners had made various loans and capital contributions to Planet Group. West Partners ultimately foreclosed on a portion of its outstanding loans to Planet Group. Harper and McGill were both "involved" in West Partners' decision to foreclose. Subsequently, Planet Group stopped making lease payments to 407. Harper acknowledges that he was "involved" in Planet Group's decision to stop making the lease payments, explaining, "[W]e were running out of cash" and "[h]ad a lot of debt and a lot of other issues."

Eventually, 407 brought an action against Planet Group for nonpayment of rent pursuant to the August 2013 lease option. On May 3, 2019, the district court entered a default judgment in favor of 407 and against Planet Group in the amount of $714,471.64, plus interest. Planet Group has failed or refused to make any payments on that judgment, and a writ of execution issued for $733,221.48 remains unsatisfied.

## 2. Procedural History

After 407 was unable to recover from Planet Group on its judgment, 407 commenced the instant action in June 2020

against Harper, McGill, and Gerhauser. In its complaint, 407 sought to pierce Planet Group's corporate veil and hold Harper, McGill, and Gerhauser personally liable for the judgment against Planet Group. Also in its complaint, 407 alleged that Harper "is the President and alter ego" of Planet Group and that McGill "is the Director and alter ego" of Planet Group. The complaint alleged that Gerhauser had "held himself out . . . as the Vice President of Finance and Administration" of Planet Group. Finally, 407 alleged that Harper and McGill "authorized" Gerhauser to exercise the August 2013 lease option with knowledge that Planet Group lacked the ability or intention to pay; absconded with, diverted, and utilized Planet Group's assets for their personal benefits; and failed to (1) "adequately capitalize Planet Group," (2) "provide Planet Group with sufficient assets to pay its debts," or (3) "cause or enable Planet Group to satisfy its lease and Judgment obligations to 407." Further, 407 alleged that Harper, McGill, and Gerhauser "defraud[ed] and harm[ed]" 407 by exercising the August 2013 lease option. In January 2021, 407 voluntarily dismissed its claims against Gerhauser with prejudice.

In January 2022, Harper and McGill moved for summary judgment. Harper and McGill offered, and the court received, the operative pleadings, the affidavit of Harper, and the affidavit of McGill. Relying on this evidence, Harper and McGill argued that neither of them had decisionmaking authority within Planet Group at any relevant time. Harper and McGill also argued that Nebraska case law does not support piercing the corporate veil against a nonshareholder, emphasizing that neither of them had ever been shareholders or received a salary or compensation of any kind from Planet Group.

In opposing summary judgment, 407 offered, and the court received, the depositions of Harper and McGill with exhibits attached and the affidavit of 407's attorney with exhibits attached. The attached exhibits included the following:

- Planet Group's notice of its exercise of its option to extend its lease, signed by Gerhauser on behalf of Planet Group and dated August 21, 2013;
- a letter from counsel to 407 asserting that Planet Group had "ceased all operations" and attempting to return all keys to the leased property, dated December 15, 2017;
- a Uniform Commercial Code financing statement amendment indicating a collateral change authorized by West Partners as a secured creditor of Planet Group, dated August 22, 2018;
- the district court's order granting a default judgment in favor of 407 and against Planet Group, dated May 3, 2019;
- a writ of execution issued for $733,221.48, dated December 3, 2019; and
- other records relating to Planet Group and its subsidiary companies, including financial records.

According to 407, this evidence showed that Harper and McGill were "heavily involved" in both Planet Group and West Partners and that Harper and McGill benefited from their dual roles by causing Planet Group to prioritize repayment of its outstanding debt to West Partners over repayment of its outstanding debt to 407.

On July 15, 2022, the district court entered summary judgment in favor of Harper and McGill and against 407, dismissing the case with prejudice. The court observed that it was undisputed that Harper and McGill were never shareholders of Planet Group, never received a salary or compensation from Planet Group, and were not part of Planet Group at the time of (1) Planet Group's formation, (2) Planet Group's execution of the lease, or (3) Planet Group's exercise of the lease option. Thus, Harper and McGill did not—and could not—exercise any control over Planet Group at any time "relevant" to 407's claims. Further, so far as the court could determine, "no Nebraska court has ever extended the 'piercing the corporate veil' doctrine to hold non-shareholder officers and directors . . . personally liable for pre-existing corporate debts."

This appeal by 407 followed. Before the Nebraska Court of Appeals addressed the appeal, we moved the case to our docket.[1]

## III. ASSIGNMENTS OF ERROR

On appeal, 407 assigns that the district court erred in granting summary judgment in favor of Harper and McGill. Specifically, 407 argues that the district court failed to analyze Harper's and McGill's control over both Planet Group and its majority shareholder, West Partners.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[2] An appellate court independently reviews questions of law decided by a lower court.[3]

## V. ANALYSIS

### 1. Piercing Corporate Veil

[3-5] Generally, a corporation is viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation.[4] A court will disregard a corporation's identity only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another.[5] A corporation's identity as

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

[2] *Slama v. Slama*, 313 Neb. 836, 987 N.W.2d 257 (2023).

[3] *McGill Restoration v. Lion Place Condo. Assn.*, 313 Neb. 658, 986 N.W.2d 32 (2023).

[4] *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008).

[5] *Id.*

a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears.[6]

While the parties dispute whether the corporate veil may be pierced against nonshareholders, we do not reach the issue. Instead, and for the sake of analysis, we assume without deciding that the corporate veil may be pierced to reach a nonshareholder. The assumption is ineffectual because, as we will explain below, the record in this case does not otherwise support veil piercing.

[6] A plaintiff seeking to pierce the corporate veil must allege and prove that the corporation was under the actual control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights.[7] In determining whether to disregard the corporate entity on the basis of fraud, we consider the following factors: (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.[8]

## 2. Summary Judgment Procedure

[7-9] Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[9] The pleadings frame the issues

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Clark v. Scheels All Sports, ante* p. 49, 989 N.W.2d 39 (2023).

to be considered on a motion for summary judgment—one of the primary purposes of summary judgment is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled.[10]

[10] We recently discussed the procedure for resolving a summary judgment motion in *Clark v. Scheels All Sports*.[11] The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial.[12] If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[13] But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial.[14]

[11] In *Clark*, we held that if the burden of proof at trial would be on the nonmoving party, as it would be here, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.[15]

### 3. Harper and McGill Met Their Burden

The complaint alleges that Harper and McGill defrauded 407 by "authoriz[ing]" Gerhauser to exercise the lease option

---

[10] See *id.*

[11] See *id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

even though they "knew, or should have known, that Planet Group was insolvent, that Planet Group did not have sufficient capital or income to satisfy the obligations undertaken pursuant to the Lease Option, and that Planet Group had no intention or ability to satisfy the obligations under the Lease Option." The complaint further alleges that Harper and McGill failed to adequately capitalize Planet Group, failed to provide Planet Group with sufficient assets to pay its debts as they became due, and absconded with or diverted assets of Planet Group for their own personal benefits.

In support of summary judgment, Harper and McGill offered the operative pleadings, as well as affidavits explaining that they did not have any decisionmaking authority within Planet Group at the times of incorporation, execution of the lease, or exercise of the lease option. Both averred, also, that they had never received any property or compensation of any kind from the corporation. As such, Harper and McGill met their prima facie burden.

## 4. Failure of 407 to Present Genuine Issue of Material Fact

At trial, the burden of proof is on the party seeking to have the court apply the exception to the general rule and pierce the corporate veil.[16] Accordingly, once Harper and McGill established a prima facie case, the burden shifted to 407 to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[17]

A party asserting that a fact is genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, interrogatories, admissions, stipulations, affidavits, and other materials.[18] The complaint and arguments of 407 seek to pierce the corporate veil

---

[16] See *Christian, supra* note 4.

[17] *Clark, supra* note 9.

[18] *Id.*

of Planet Group on the basis of fraud and, specifically, on the basis of multiple fraud factors. As such, we address each of the fraud factors in turn and conclude that, even giving 407 the benefit of all reasonable inferences, none of the factors weighs in favor of veil piercing.

### (a) Inadequate Capitalization

The first factor is whether there is evidence of inadequate capitalization, or capitalization very small in relation to the nature of the business of the corporation and the risks entailed.[19] A corporation which was adequately capitalized when formed but which has suffered losses is not necessarily undercapitalized.[20] Inadequate capitalization is measured at the time of incorporation.[21]

Here, it is undisputed that Harper and McGill were not positioned to exercise any control over Planet Group at the time of incorporation. Accordingly, it is unnecessary to determine whether the evidence establishes that Planet Group was undercapitalized at that time—this factor cannot and does not weigh in favor of piercing the corporate veil against Harper or McGill.

### (b) Insolvency

The second factor is whether the corporation was insolvent at the time the debt was incurred.[22] A corporation is insolvent if it is unable to pay its debts as they become due in the usual course of its business, or if it has an excess of liabilities of the corporation over its assets at a fair valuation.[23] Whether a corporation is insolvent is usually a question of fact.[24]

---

[19] *Christian, supra* note 4.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

The complaint alleges that Harper and McGill caused Planet Group to exercise the lease option while insolvent, thereby defrauding and harming 407. However, as previously mentioned, Harper and McGill both produced evidence in support of summary judgment that they lacked decisionmaking authority on behalf of Planet Group at the time the lease option was exercised. In response, 407 provided some information about whether Planet Group was insolvent at that time. Notably, however, 407 was unable to produce any evidence that Harper and McGill had any control over Planet Group when the lease was exercised. As such, this factor does not weigh in favor of veil piercing.

### (c) Diversion of Funds or Assets

The third factor is whether there is evidence of a diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses.[25] The complaint alleges that Harper and McGill absconded with or diverted assets of Planet Group that should have been used to pay 407. Specifically, 407 alleges and argues that Harper and McGill diverted and utilized assets of Planet Group for their own personal benefits.

As previously mentioned, Harper and McGill produced affidavits in support of summary judgment explaining that neither of them had ever received any property or compensation of any kind from Planet Group. Harper's affidavit additionally addresses the financial transfers at issue between Planet Group and West Partners, explaining that West Partners did foreclose on some loans owed by Planet Group, yielding "pennies on the dollar," but ultimately experienced "a total loss" with regard to millions of dollars the entity had spent over the course of several years purchasing Planet Group's stock. Additionally, Harper's and McGill's depositions indicate that neither was an owner of West Partners.

---

[25] *Id.*

In opposing summary judgment, 407 offered Harper's deposition, wherein Harper explained that Planet Group stopped making its rent payments to 407 because the corporation was running out of cash and had "a lot of other issues." When asked where Planet Group's money had gone, Harper responded that some had been used for "business operations" in connection with efforts to "save the company" and that later, some had been used to pay off secured debt. Harper explained that since then, Planet Group, with the assistance of counsel, had been "trying in good faith to try and work something out" as to both of its competing creditors, namely 407 and the State of Nebraska.

In its brief in opposition to summary judgment, Planet Group emphasized evidence indicating that Harper, McGill, or both were involved in (1) Planet Group's sale of some of its subsidiary companies, (2) Planet Group's decision to stop paying rent to 407, and (3) West Partners' decision to foreclose on some of its outstanding loans to Planet Group. As suggested by 407, such evidence warrants an inference that as the end drew near for Planet Group, Harper and McGill liquidated certain assets and then preferentially repaid West Partners rather than 407 in order to siphon assets or otherwise receive a personal benefit. On the record before us, a fact finder would have to speculate to arrive at the same conclusion.

We have previously explained that conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment; the evidence must be sufficient to support an inference in the nonmovant's favor without the fact finder engaging in guesswork.[26] As such, while it is true that 407 is entitled to all reasonable inferences from the record, nothing in the record supports a reasonable inference that this factor weighs in favor of veil piercing.

---

[26] *Clark, supra* note 9.

#### (d) Corporation as Intermediary

The fourth factor is whether there is evidence that "the corporation is a facade for the personal dealings of the shareholder and the operations of the corporation are carried on by the shareholder in disregard of the corporate entity."[27] The separate entity concept of the corporation may be disregarded where the corporation is a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors.[28]

Planet Group was not a mere shell or business conduit of Harper and McGill, as was the case in *Nebraska Engineering Co. v. Gerstner*.[29] On the contrary, Planet Group is a legitimate business, albeit defunct. This factor does not weigh in favor of veil piercing.

### VI. CONCLUSION

The district court's judgment was correct and is affirmed.

AFFIRMED.

MILLER-LERMAN, J., not participating.

---

[27] *Christian, supra* note 4, 276 Neb. at 885, 759 N.W.2d at 463.

[28] *Id.*

[29] *Nebraska Engineering Co. v. Gerstner*, 212 Neb. 440, 323 N.W.2d 84 (1982).