Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/23/2024 09:12 AM CDT

Ron Strahan, appellant, v.
McCook Hotel Group, LLC, appellee.

___ N.W.3d ___

Filed August 16, 2024.    No. S-23-176.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. \_\_\_\_: \_\_\_\_. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

3. **Negligence.** Not every negligence action involving an injury suffered on someone's land is properly considered a premises liability case.

4. \_\_\_\_. In Nebraska, a premises liability case generally falls into one of three categories: (1) those concerning the failure to protect lawful entrants from a dangerous condition on the land, (2) those concerning the failure to protect lawful entrants from a dangerous activity on the land, and (3) those concerning the failure to protect lawful entrants from the acts of a third person on the land.

5. **Summary Judgment.** Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

6. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

7. \_\_\_\_: \_\_\_\_. If the burden of proof at trial would be on the nonmoving party, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

8. **Negligence: Liability: Proximate Cause.** In Nebraska, a possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor either created the condition, knew of the condition, or by the existence of reasonable care would have discovered the condition; (2) the possessor should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the possessor should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the possessor failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.

9. **Negligence: Words and Phrases.** There is no fixed rule for determining when a risk of harm is unreasonable. But the plain meaning of the term suggests a uniquely or unacceptably high risk of harm—something more than the usual risks commonly encountered.

10. \_\_\_\_: \_\_\_\_. In a premises liability case, the phrase "unreasonable risk of harm" means a risk that a reasonable person, under all the circumstances of the case, would not allow to continue.

11. **Negligence: Presumptions.** The mere fact that a fall occurred is not evidence of negligence, nor does it raise a presumption of negligence.

12. **Summary Judgment.** Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment.

13. **Evidence: Proof.** The failure of proof on an essential element of a claim necessarily renders all other facts immaterial.

14. **Judgments: Appeal and Error.** Where the record demonstrates that the decision of the trial court is ultimately correct, an appellate court may affirm.

Appeal from the District Court for Red Willow County, PATRICK M. HENG, Judge. Affirmed.

Ross Pesek, of Pesek Law, L.L.C., and MaryGaye LeBoeuf, pro hac vice, for appellant.

Michael L. Moran and Daniel E. Kemp, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.

While staying in a hotel, Ron Strahan slipped and fell while showering. He filed a negligence action against the hotel, alleging the floor was not slip resistant and presented an unreasonably dangerous condition. The district court granted the hotel's motion for summary judgment, reasoning that Strahan could not establish a material element of his premises liability claim. Strahan appeals, and we affirm.

## I. BACKGROUND

McCook Hotel Group, LLC, owns and operates a hotel in McCook, Nebraska, that was constructed in 2016. Strahan stayed at that hotel for several days in January 2019 while traveling for business. He stayed in room No. 104 (room 104), which included a handicap accessible bathtub/shower combination that the parties generally refer to as a "shower tub." The following photograph depicts the shower tub in room 104:



On the morning of January 21, 2019, Strahan was injured when he slipped and fell while using the shower tub. He filed a complaint against the hotel in the district court for Red Willow County, alleging he fell "because the floor of the shower was not equipped with slip resistant materials." The complaint alleged:

• the shower tub floor was "unreasonably slippery" and was not equipped with slip-resistant materials;
• the hotel either created the condition, knew of the condition, or, in the exercise of reasonable care, should have discovered the condition;
• the hotel should have realized the condition created an unreasonable risk of harm to lawful entrants;
• the hotel should have expected that lawful entrants such as Strahan would fail to discover, realize, or protect themselves from the danger;
• the hotel failed to exercise reasonable care in remedying the condition; and
• the hotel's negligence was the proximate cause of Strahan's fall and damages.

The complaint sought to recover damages for past and future medical expenses, past and future pain and suffering, lost income, and loss of earning capacity. The hotel filed an answer generally denying it was negligent and alleging several affirmative defenses.

## 1. Summary Judgment

Approximately 2 years after the complaint was filed, the hotel moved for summary judgment in its favor, arguing that Strahan could not prove the requisite elements of a premises liability action as a matter of law. The court held a hearing on the summary judgment motion, and both parties adduced evidence.

The hotel offered portions of Strahan's deposition testimony; portions of the deposition testimony given by the hotel's general manager, who also served as the hotel's designated

corporate representative; and a report prepared by an expert Strahan retained to inspect the shower tub.

Strahan offered photographs of the shower tub and his injuries and the full deposition transcripts of both Strahan and the hotel manager. Strahan also offered his own affidavit and the affidavits signed by his friend Thomas Harrigan and the expert Strahan retained to inspect the shower tub.

### (a) Strahan's Deposition and Affidavit

Strahan testified that in the early morning hours of January 21, 2019, he turned the water on in the shower tub and stepped in. He stood facing the showerhead, and while he was shampooing his hair, his feet slipped and he began to fall. He tried to reach for a grab bar but fell out of the shower tub and landed on the bathroom floor, hitting his head. He sustained injuries and bruising to his head, face, wrist, and foot.

Strahan testified that after his fall, he rubbed his hands over the floor of the shower tub and did not feel any "roughness" or "texture." He took a photograph of the shower tub, which depicted a "crescent moon shaped chip" near the drain but did not clearly depict whether the standing area of the floor had a textured surface. The day after his fall, Strahan laid a bath towel on the shower tub floor before showering.

Strahan's affidavit stated that based on his experience staying in hotels, his "expectation is that hotel rooms are situated with bathtub/shower floors with anti-slip surfaces." He averred there were no "warning signs or a rubber mat present that would indicate the tub floor would be slick or did not have a slip-resistant" surface. He stated, "I know that water can be slippery in some circumstances, however I had no reason to believe water running in this tub would be slippery" and that "it never crossed my mind the tub would be slick or dangerous when the water was turned on."

### (b) Harrigan's Deposition

Approximately 6 months after Strahan's fall, his friend Harrigan stayed in room 104 at the same hotel. Harrigan

testified that he did not observe the shower tub floor to have a slip-resistant surface. Harrigan also testified that he had stayed at the same hotel approximately 36 times between November 2018 and June 2021 and that in his experience, "several" of the rooms had shower tubs without a slip-resistant floor.

Harrigan took a photograph of the shower tub in room 104 in July 2019. Like Strahan's photograph from January 2019, Harrigan's photograph depicted a crescent-shaped chip near the drain but did not clearly depict whether the standing area of the floor had a textured surface.

(c) Hotel Manager's Deposition

In March 2022, Strahan deposed the hotel manager. The manager testified that the hotel was built in 2016 and had 54 rooms, all with similarly molded acrylic shower tubs. The hotel did not have an active role in choosing the shower tubs to be installed. Instead, the hotel allowed the builder to make all decisions about the shower tubs, and it understood the builder would "make sure [the shower tubs] are approved for hotels." The manager testified that all of the rooms in the hotel had shower tubs that had been manufactured with slip-resistant floors that she described as "textured." She specifically testified the shower tub floor in room 104 had a "textured surface" and that, other than regular maintenance, it was in the same condition as when it was originally installed in 2016.

The manager testified that the hotel was aware guests would use the shower tubs to bathe, and she generally agreed the hotel had a duty to ensure the shower tubs were reasonably safe for that purpose. She also admitted the hotel knew it was possible for guests to slip and fall in a wet shower tub. She testified the hotel did not routinely provide rubber mats for the shower tubs and did not have signs or decals warning guests about the shower tubs. She testified that when Strahan fell, the hotel had been open for 31 months and had not received any complaints about the shower tubs.

The manager testified that the hotel would not expect guests to inspect the shower tub floor for slip resistance prior to using it, and she agreed it would be "reasonable for the customer or the patron . . . using the tubs . . . to have an expectation that the hotel is providing a slip resistant tub." When asked if it would "create a dangerous condition" if the shower tub in room 104 did not have slip-resistant floors, the manager answered, "Hypothetically, possibly, but it's got texture on it."

### (d) Expert's Report and Affidavit

Strahan retained an expert to inspect the shower tub in room 104. The inspection took place on September 6, 2022, after Strahan and the hotel manager had been deposed. The expert prepared a report stating that the shower tub was made of acrylic and had a "raised truncated type slip resistant surface that is part of [its] construction" and "covers the entire [shower] tub bottom." The expert's report included photographs of the floor that plainly depicted a textured, cross-hatched surface. The report stated that the expert "physically felt" the floor and determined the "[r]esistance felt similar in both dry and wet conditions . . . ." The report also stated that "[n]o damage/chipping/scratches are evident on any part of the [shower] tub or surround" and that the shower tub "appear[ed] to be unmodified original construction."

After reviewing the expert's report, Strahan noticed the expert's photographs did not depict the crescent-shaped chip near the drain that was visible in the 2019 photographs taken by Strahan and Harrigan. After the expert was advised of this, he prepared an affidavit specifically stating that he did not observe any chip during his September 2022 inspection, nor did he observe evidence of repairs to the shower tub floor. The expert opined "there is no means by which the chip in the [shower] tub floor would simply disappear, [and] the [shower] tub would necessarily had to have been replaced."

#### (e) Hotel Manager's Affidavit

In response to the inspection report and affidavit from Strahan's expert, the hotel manager prepared an affidavit on behalf of the hotel, averring that "routine maintenance" of the hotel shower tubs included "repair of any cosmetic defects, such as minor chips in the bathtubs' surface." She further averred that a commercially available resin was used by the hotel to repair minor chips in the surfaces of the shower tubs and that sometime between July 31, 2019, and September 6, 2022, the hotel applied that resin to the chip in the shower tub floor in room 104. The manager stated that other than the chip repair, "the bathtub in room 104 . . . has not been modified or replaced since it was originally installed." She attached a photograph to her affidavit depicting the resin-filled chip in the shower tub floor of room 104.

### 2. DISTRICT COURT ORDER

In a written order, the district court granted summary judgment in favor of the hotel, finding as a matter of law that Strahan could not prove at least one of the material elements of his premises liability claim. The order began by reciting the familiar elements of a premises liability claim involving conditions on the land:

> A possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor either created the condition, knew of the condition, or by the existence of reasonable care would have discovered the condition; (2) the possessor should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the possessor should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the possessor failed to use reasonable care to protect the lawful visitor against the danger; and

(5) the condition was a proximate cause of damage to the plaintiff.[1]

The district court found there was a factual dispute as to whether the shower tub floor in room 104 had a textured or slip-resistant surface at the time Strahan fell, but it ultimately concluded that the factual dispute was not material. In reaching that conclusion, the court examined both the second and third elements of a premises liability claim.

Regarding the second element, the court questioned whether there was any evidence adduced to support a reasonable inference that a shower tub without a slip-resistant floor was an unreasonably dangerous condition. The court noted evidence establishing that the hotel intended to provide shower tubs with slip-resistant floors and that Strahan expected as much, but emphasized that there was no evidence showing an industry standard, any health or safety code, or similar law or regulation that required shower tubs to have slip-resistant floors. The court also cited cases from other states for the general proposition that showers and tubs without slip-resistant materials are not presumed to be unreasonably dangerous.[2] But ultimately, the court did not resolve the summary judgment motion based on the second element. Instead, the court appears to have assumed that a wet shower or tub presents an "open and obvious" danger of slipping, and it analyzed the evidence under the open and obvious doctrine.

The court noted that in Nebraska, the presence of an open and obvious condition generally bars recovery on a premises liability claim unless the plaintiff shows the possessor should have expected that lawful visitors either would not discover the condition or would fail to protect themselves

---

[1] *Sundermann v. Hy-Vee*, 306 Neb. 749, 766, 947 N.W.2d 492, 505 (2020); See, e.g., *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023).

[2] See, *Hale v. SS Liquors, Inc.*, 956 N.E.2d 1189 (Ind. App. 2011); *Jones v. Abner*, 335 S.W.3d 471 (Ky. App. 2011); *Kutz v. Koury Corp.*, 93 N.C. App. 300, 377 S.E.2d 811 (1989).

from it.[3] The court reasoned that, viewing the evidence in the light most favorable to Strahan, there was no evidence "from which it can be inferred that [the hotel] should have expected [Strahan] would fail or be unable to protect himself against the open and obvious dangers associated with taking a shower." The court concluded that although there was "obviously an evidentiary dispute as to whether there was slip-resistant tub flooring in [r]oom 104 and whether the tub had been replaced," such disputes were not material, and the hotel was entitled to judgment as a matter of law because Strahan was unable to satisfy the third element of his premises liability claim. The court granted summary judgment in favor of the hotel and dismissed the complaint with prejudice.

Strahan filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Strahan assigns, consolidated and restated, that the district court erred in granting summary judgment because (1) there were genuine issues of material fact regarding the condition of the shower tub floor at the time of Strahan's fall and (2) there were genuine issues of material fact bearing on the application of the open and obvious doctrine.

## III. STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[4] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the

---

[3] See, *Clark, supra* note 1; *Sundermann, supra* note 1.

[4] *Woodward v. Saint Francis Med. Ctr.*, 316 Neb. 737, 6 N.W.3d 794 (2024).

light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[5]

## IV. ANALYSIS

### 1. Premises Liability

[3,4] Not every negligence action involving an injury suffered on someone's land is properly considered a premises liability case,[6] but this action plainly presents a premises liability claim, and no party contends otherwise. In Nebraska, a premises liability case generally falls into one of three categories: (1) those concerning the failure to protect lawful entrants from a dangerous condition on the land, (2) those concerning the failure to protect lawful entrants from a dangerous activity on the land, and (3) those concerning the failure to protect lawful entrants from the acts of a third person on the land.[7] The parties agree this case falls squarely into the first category of premises liability cases, because Strahan has sued the hotel claiming the shower tub presented an unreasonably dangerous condition.

In the sections that follow, we review the premises liability framework as it applies to conditions on the land, after which we analyze the parties' summary judgment evidence in light of those principles. But first, we recall the familiar summary judgment principles that frame our analysis.

[5-7] Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[8] The party moving for summary

---

[5] *Id.*

[6] *Sundermann, supra* note 1; *Hodson v. Taylor*, 290 Neb. 348, 860 N.W.2d 162 (2015).

[7] *Sundermann, supra* note 1.

[8] *407 N 117 Street v. Harper*, 314 Neb. 843, 993 N.W.2d 462 (2023).

judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial.[9] If the moving party makes a prima facie case, the burden shifts to the non-movant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[10] And, if the burden of proof at trial would be on the nonmoving party, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.[11]

[8] In Nebraska, a possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if

(1) the possessor either created the condition, knew of the condition, or by the existence of reasonable care would have discovered the condition; (2) the possessor should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the possessor should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the possessor failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.[12]

The parties agree there was sufficient evidence to establish the first element, because the hotel installed the shower tub

---

[9] *Id.*

[10] *Id.*

[11] *Clark, supra* note 1.

[12] *Sundermann, supra* note 1, 306 Neb. at 766, 947 N.W.2d at 505.

and thus created the condition about which Strahan complains. We therefore begin our de novo review by considering the evidence adduced relating to the second element of Strahan's premises liability claim.

## 2. Unreasonable Risk of Harm

[9,10] The second element of a premises liability claim requires Strahan to show the hotel should have realized the condition of the shower tub involved an unreasonable risk of harm to lawful visitors. We discussed this element in *Sundermann v. Hy-Vee*,[13] where we explained:

> Our cases considering conditions on the land have generally drawn a distinction between conditions which present ordinary or common risks, and those which present unreasonable risks. By limiting tort liability to only those conditions which pose an unreasonable risk of harm, the traditional premises liability test balances two competing policies: requiring businesses to exercise reasonable care to maintain the premises in a safe condition and protecting businesses from becoming the insurers of their patrons' safety.

> There is no fixed rule for determining when a risk of harm is unreasonable. But the plain meaning of the term suggests a uniquely or unacceptably high risk of harm— something more than the usual risks commonly encountered. In some premises liability cases, we have approved of defining the phrase "unreasonable risk of harm" to mean "'a risk that a reasonable person, under all the circumstances of the case, would not allow to continue.'"

[11] We also discussed the second element of a premises liability claim in *Clark v. Scheels All Sports*.[14] In that case, the plaintiff fell while entering a retail store and claimed that her fall was caused either by an unsafe foot grate or by

---

[13] *Id*. at 767-68, 947 N.W.2d at 505-06. See, also, NJI2d Civ. 8.26 and 8.83.

[14] *Clark, supra* note 1.

defective entry doors. The store moved for summary judgment, arguing that discovery showed the plaintiff had not developed competent evidence showing that either condition presented a uniquely or unacceptably high risk of harm beyond the ordinary risks encountered by lawful entrants on the premises, and thus, she could not prove the second element of her premises liability action. The plaintiff argued that her own testimony about the manner of her fall provided circumstantial evidence that the conditions were unreasonably dangerous and was sufficient to create a genuine issue of fact for trial. We disagreed, reasoning, with respect to the foot grate:

> [E]vidence describing how [the plaintiff] fell, without more, does not show the foot grate was unreasonably dangerous or support a reasonable inference in that regard. A condition is unreasonably dangerous only if it presents a uniquely or unacceptably high risk of harm—something more than the usual risks commonly encountered. And the mere fact that a fall occurred is not evidence of negligence, nor does it raise a presumption of negligence.

> Moreover, the record contains no materials that support a reasonable inference that the foot grate presented an unreasonably dangerous condition. None of the witnesses deposed identified any feature of the foot grate specifically, or the foyer generally, that increased the danger of tripping or falling or otherwise presented an unreasonable risk of harm. None of the affidavits, depositions, or discovery responses indicated that any witness would testify the foot grate presented an unreasonable risk of harm. . . . Nor was there evidence that others had fallen on the grate, or similar grates, that might arguably support a reasonable inference that the grate posed an unreasonable risk of harm.[15]

---

[15] *Id*. at 74-75, 989 N.W.2d at 56 (internal quotation marks omitted).

*Clark* also concluded the record on summary judgment failed to show a genuine factual dispute about whether the entry doors were unreasonably dangerous, reasoning:

> None of the depositions in the record identify any defect with the doors or any history of malfunctioning that might arguably support a reasonable inference the doors posed an unreasonable risk of harm. The affidavit of [the plaintiff's] counsel stated only that the entry doors had been replaced several years after her fall; it did not aver the doors were defective, dangerous, or had ever malfunctioned. And none of the written discovery responses in the record indicate that any witness would testify, or any exhibit would show, that the entry doors malfunctioned or otherwise presented an unreasonable risk of harm. [16]

*Clark* ultimately held that, even viewing the evidence in the light most favorable to the plaintiff and giving her the benefit of all reasonable inferences, the record on summary judgment showed a complete absence of proof concerning the second element of her premises liability claim, and the store was therefore entitled to summary judgment as a matter of law.

Here, the parties' appellate briefing focuses primarily on the third element of Strahan's claim, addressing whether the lower court correctly applied the open and obvious doctrine. That doctrine generally holds that when a dangerous condition is open and obvious, the owner is not liable in negligence for harm caused by the condition, unless the owner should have expected that lawful visitors would not discover or realize the danger or would fail to protect themselves against it. [17] But application of the open and obvious doctrine necessarily assumes the existence of a dangerous condition. So, in our de novo review, we consider as a threshold matter whether the record contains evidence that the shower tub was

---

[16] *Id*. at 76-77, 989 N.W.2d at 57.

[17] See *Sundermann, supra* note 1.

unreasonably dangerous before we address whether the evidence supports application of the open and obvious doctrine.

Strahan's theory, as alleged and argued below, appears to be that a shower tub without a textured or slip-resistant floor presents an unreasonably dangerous condition. But as we will explain, we see no competent evidence in the record to support that theory, and Strahan directs us to none.

The mere fact that Strahan slipped in a wet shower tub is not evidence of negligence and does not, without more, support a reasonable inference that an unreasonably dangerous condition existed.[18] At the time Strahan fell, the hotel had been open for 31 months and had not received any complaints about the shower tubs. More importantly, Strahan presented no evidence—expert or otherwise—tending to show that the shower tub in room 104 was unusually slippery or had a coefficient of friction that presented a uniquely or unacceptably high risk of harm. He presented no evidence of industry standards for shower tubs, generally, and no evidence that any code, regulation, ordinance, or similar provision required the shower tub to have a textured or slip-resistant surface. In fact, the record contains no evidence that the shower tub failed to meet any applicable safety standard or that it was unsafe or defective in any respect. Nor was there any evidence suggesting that an acrylic shower tub with a textured floor is safer or less slippery than one with an ordinary floor. So, although there was a factual dispute about whether the shower tub in room 104 had a textured surface at the time of Strahan's fall, we cannot conclude, on this evidentiary record, that such a dispute was material.

[12] On this record, a fact finder would have to speculate to conclude that the shower tub presented an unreasonable risk of harm. And "conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material

---

[18] See *Clark, supra* note 1.

issues of fact for the purposes of summary judgment."[19] Even giving Strahan all reasonable inferences from the evidence in the record, we see no direct or circumstantial evidence in the record to support his theory that a shower tub without a textured or slip-resistant floor presents an unreasonably dangerous condition. Nor do we find support for such a theory in case law generally.

In *Jones v. Abner*,[20] the plaintiff was injured when she fell while getting into a hotel bathtub. She alleged the tub was unusually slippery because the slip-resistant strips had been allowed to deteriorate. The court in *Abner* concluded that any factual dispute regarding the failure to maintain the strips was immaterial, reasoning:

> [The plaintiff] seems to assume that a bathtub that is not equipped with safety strips or hand-holds is an inherently dangerous condition, but she failed to produce evidence of any type of industry standard, statutory law, or common-law rule that could arguably reflect a duty on the part of [the defendant] to equip motel bathtubs with such safety devices. The owner of a motel or hotel has "the duty to exercise that degree of care generally used by ordinarily careful, prudent hotel operators in circumstances similar to those proven in the case, to provide reasonably safe accommodations," but [the owner] is not an insurer of a guest's safety. . . . [The plaintiff] simply did not provide the trial court with anything of substance to meet this burden.[21]

In *Hale v. SS Liquors, Inc.*,[22] the plaintiff slipped and fell in a hotel bathtub. He did not see any slip resistant materials in the tub and described it as "'slippery.'" An engineering company hired to inspect the tub found the floor was

---

[19] *Id*. at 75, 989 N.W.2d at 56.

[20] *Abner, supra* note 2.

[21] *Id*. at 476-77 (citations omitted).

[22] *Hale, supra* note 2, 956 N.E.2d at 1190.

smooth with a pattern of gray circles that were "'intended as texturing'"[23] and thus concluded the tub complied with all applicable safety standards. Another expert suggested the gray circles may have been added after the plaintiff's fall, but the appellate court concluded this did not create a material factual dispute preventing summary judgment, because there was no evidence that a tub without the gray circles would have failed to comply with industry standards. It also reasoned that "[e]ven if the gr[a]y circles decreased the likelihood of a fall, that does not by itself establish that the tub was unreasonably unsafe without the circles."[24]

In *Leavins v. Nayan Corp.*,[25] the plaintiff slipped and fell in a hotel bathtub, and there was testimony that the tub was manufactured with a "'raised bumpy area'"[26] on the floor. The court held that under Georgia premises liability law, the hotel could only be liable if the tub presented an unreasonable risk of harm, and it found there was no genuine issue of material fact on that issue, reasoning:

> [The plaintiff] offered no expert testimony that the bathtub itself was somehow unreasonably hazardous, nor did she show that the bathtub was in violation of any applicable safety code. Indeed, [the plaintiff] proffered no evidence that the bathtub presented a hazard other than her fall and her and her daughter's testimony that they believed that the bathtub was "slippery" and/or "slick." Because [the plaintiff's] claim lacked evidence that the bathtub presented an unreasonable risk of harm, the

---

[23] *Id.* at 1191.

[24] *Id*. at 1193.

[25] *Leavins v. Nayan Corp*., 344 Ga. App. 417, 810 S.E.2d 324 (2018).

[26] *Id*. at 419, 810 S.E.2d at 327. Cf. *Hall v. Noble-Interstate Management Group*, 349 Ga. App. 661, 664, 824 S.E.2d 705, 708 (2019) (reversing grant of summary judgment because plaintiff adduced evidence that hotel tub did not comply with certain state safety regulations requiring hotel tubs to have "'[a]nti-slip tubs, slip strips, appliques, or slip-proof mats'" and thus created jury question).

trial court correctly granted [the defendant's] summary judgment.[27]

In *Kutz v. Koury Corp.*,[28] the North Carolina Court of Appeals addressed whether the trial court properly granted a hotel's motion for a directed verdict. There, the plaintiff slipped in a hotel shower and alleged there were "non-slip strips"[29] on the bottom of the tub but that some were missing. The court found that even if some strips were missing, the hotel was not negligent as a matter of law, reasoning:

> We cannot say, however, that failure to maintain any certain number of non-slip strips was negligence on defendant's part. It is common knowledge that bathtub surfaces, especially when water and soap are added, are slippery and that care should be taken when one bathes or showers. Here there was evidence that, even with one-half of the strips missing, plaintiff could have showered while standing on the remaining strips. We note that plaintiff had showered in the same bathtub the day before his slip without incident. The bathtub here was not so unnecessarily dangerous so as to give rise to a claim of negligence.[30]

In *Cooper Hotel Services, Inc. v. MacFarland*,[31] the plaintiff slipped and fell in a hotel bathtub. The evidence at trial showed the hotel had requested "textured-bottomed tubs" but that "smooth-bottomed" tubs were installed based on the tub manufacturer's representation that such tubs met all safety requirements, were easier to clean, and "were the bathtubs of choice of several major hotel chains with the same safety

---

[27] *Leavins, supra* note 25, 344 Ga. App. at 421, 810 S.E.2d at 328 (emphasis omitted).

[28] *Kutz, supra* note 2.

[29] *Id*. at 301, 377 S.E.2d at 812.

[30] *Id*. at 304, 377 S.E.2d at 813-14.

[31] *Cooper Hotel Services, Inc. v. MacFarland*, 662 So. 2d 710 (Fla. App. 1995).

concerns."[32] The evidence also showed that more than 300,000 showers had been taken in identical tubs in the same hotel without incident. The trial court overruled the hotel's motion for directed verdict at the close of the plaintiff's evidence, and the jury returned a verdict for the plaintiff. The hotel appealed, arguing its motion for directed verdict should have been sustained. The appellate court agreed, reasoning:

> [T]he record is devoid of evidence—expert or otherwise—to establish that [the hotel] breached its duty of care . . . . [The plaintiff] made no showing that . . . the smooth-bottomed tubs installed failed to meet the non-slip specifications required; that smooth-bottomed tubs do not or cannot offer the same non-slip performance as textured tubs regardless of the materials they are made of; that [the hotel] failed to properly maintain the tub in which [the plaintiff] fell [or] that the tub was, otherwise, unreasonably dangerous . . . .
>
> To the contrary, [the plaintiff] showed only that she safely stepped into the tub while the water was running, washed the front of her body, and fell upon turning around. Viewed in the light most favorable to her, such evidence shows only that at some point during the course of her shower, the tub became slippery. The evidence, however, does not establish why.
>
> Based on the foregoing, [the plaintiff] failed to establish a prima facie case of negligence.[33]

These cases illustrate the critical importance, in a premises liability case such as this, of adducing evidence showing that a shower or tub presented "a uniquely or unacceptably high risk of harm—something more than the usual risks commonly encountered."[34] Here, Strahan alleged that a shower tub without a textured or slip-resistant floor is unreasonably

---

[32] *Id*. at 712.

[33] *Id.* at 713.

[34] *Sundermann, supra* note 1, 306 Neb. at 768, 947 N.W.2d at 506.

dangerous, but in response to the hotel's motion for summary judgment, he adduced only speculation and conjecture to support that allegation. Consequently, even when we view the evidence in the light most favorable to Strahan and give him all reasonable inferences from that evidence, we cannot find that he adduced any evidence to satisfy the second element of his premises liability claim.

[13] The failure of proof on this essential element of Strahan's premises liability claim necessarily rendered all other facts immaterial and entitled the hotel to summary judgment as a matter of law.[35]

[14] Where the record demonstrates that the decision of the trial court is ultimately correct, an appellate court may affirm.[36] Although our reasoning differs from that applied by the district court, we agree on this evidentiary record that the hotel was entitled to summary judgment as a matter of law. Absent direct or circumstantial evidence showing that the shower tub presented an unreasonably dangerous condition, Strahan cannot prove an essential element of his premises liability claim.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED.

---

[35] See *Clark, supra* note 1.

[36] See *Sundermann, supra* note 1.